## JONES & WILLIAMS v. FITZPATRICK.

1. CHARGE.—The charge of the Circuit Judge in this case held not to be injurious to the plaintiffs.
2. EXPERTS—EVIDENCE—NEW TRIAL.—The testimony of experts is merely the expression of opinions, and it is not error in a Circuit Judge to refuse to set aside a verdict, because the amount found by the jury was much less than the experts (the only witnesses examined as to the value of services) thought the services were worth.
3. NEW TRIAL—CIRCUIT JUDGE.—A motion for a new trial, upon the ground that the verdict is against the preponderance of the testimony, is addressed largely to the discretion of the Circuit Judge, and it is not error for him to refuse to substitute his own view of the evidence for that taken by the jury.

4. CIRCUIT JUDGE—JURY—ATTORNEY.—It is not error in Circuit Judge to hold that the jury are the supreme judges of the value of services rendered by an attorney.

5. JURY—EXPERTS.—The jury are not bound to take the opinion of expert witnesses as to the value of services rendered by an attorney, but may rely on their own judgment.

6. NEW TRIAL—RELATIONSHIP OF JURORS.—A motion for a new trial, on the ground that some of the jurors were related to one of the parties, must be based on affidavits served before motion.

7. QUERY—APPEAL—JURY.—Can a respondent in a jury case have a judgment sustained on any ground not submitted to the jury?

Before BENET, J., Lancaster, March, 1895.    Affirmed.

Action by Ira B. Jones and P. Y. Williams, partners practicing law, against John H. Fitzpatrick, as guardian of Mary Kibler, to recover a fee for foreclosure suit.

The following is the charge of the Circuit Judge:

This is a suit brought by Jones & Williams, plaintiffs, against John H. Fitzpatrick, as guardian of Mary A. Kibler, the plaintiffs claiming that Fitzpatrick, as guardian, owes them a fee for professional services as lawyers, a fee of $150, for the foreclosure of the Massey mortgage. The parties both agree that the work was done, that the mortgage was foreclosed. There was some litigation in connection with it in the Court; a trial had, a verdict or decree had, and a sale was made and the money realized as you have heard. The contest is as to whether a fee was to be paid for that work or not, the plaintiffs claiming that they are entitled to $150 as a reasonable fee for that work, in comparison with work of the same kind; that that was a very reasonable fee; that they have been paid nothing for it, and that they are justly entitled to that amount for their services. The defendant, Fitzpatrick, admitting the services, alleges that Jones & Williams foreclosed that mortgage and did all the work in connection with that foreclosure suit, under a general contract made with him in 1887 by Mr. Jones, one of the firm of Jones & Williams afterwards, but at that time by himself, by which he was to attend to

all the business growing out of the investing of the money of Fitzpatrick's ward, and any litigation that might arise out of those investments, such as foreclosure of the mortgages. The defendant sets up that general contract, and says that under that contract it was agreed that nothing was to be charged by Mr. Jones; that Mr. Fitzpatrick was not to pay any court costs, the money was to net him ten per cent., exclusive of court costs, he was not to pay any court costs at all, no expenses of litigation. Now, that is the contract set up by Mr. Fitzpatrick, and as to that, of course, he assumes the burden of proof. He is bound to show you, by a preponderance of the testimony, that that contract was made. You alone can settle the matter. Mr. Jones denies that any such contract ever existed; Mr. Fitzpatrick asserts as positively that it did exist. In settling that, I don't think it necessary that a jury should pronounce one of those two men as testifying falsely and the other truthfully. The jury is not called upon to decide cases between false witnesses and truthful witnesses, so much as between people who testify to their best recollection; and jurors know that the memory of man is not always trustworthy, and that the purest, most truthful men may testify under a mistake, and a jury that hears a case such as this has to settle which of two men, each one testifying to the best of his knowledge and belief, has the best recollection of the circumstances he testifies to. To repeat: it is not necessary to consider one or the other witnesses, in a case like this, as testifying to lies. Whatever your verdict may be, on whichever side you may find, it would not mean necessarily that the other side failed, because he had testified falsely.

The plaintiffs, the firm of Jones & Williams, seek the value of the services for work done, alleging that there was no contract. Mr. Fitzpatrick says there was a contract. Now, a contract is an agreement between two or more persons, either in writing or by word of mouth, equally binding upon both parties, the contracting parties; but

there can be no contract unless there has been a mutual understanding between the parties. Their minds must meet—that is to say, no one person can establish a contract, because he understood so and so to be the case, if the other did not; there could be no contract unless both understood at the time that such were the terms of the agreement; and the one who alleges the contract must prove it by the preponderance of the evidence, by the greater weight of the testimony. In a civil suit, that is always the rule, the preponderance of the evidence the greater weight of the testimony; and if a party who assumes the burden of proof simply leaves the matter in doubt, so that you can't tell on which side the scales go, the scales being even, his case fails; he does not prevail on the civil side of the court until his side of the scale is heavier. When the scales are even, then the attempt to prove has failed, because he who attempts to prove on the civil side of the court must prove by the greater weight of the testimony. I cannot help you much, gentlemen, in considering the facts in this case; they are very few. You are to ask yourselves: Was this foreclosure suit, which was instituted in 1892, made under an agreement made in 1887, and was that agreement that there was to be attorney's fees paid by Fitzpatrick? Was there such an agreement? If so, you may ask, was anything said by Fitzpatrick in 1892 about that agreement made in 1887? Did he remind Jones, or Jones & Williams, of that agreement of 1887? If he did not, was that· because there was no such agreement, or was it simply because he forgot? Or you may ask: Is it possible that he may have imagined or believed there was such an agreement, while there was none? If there was no such agreement, did Fitzpatrick bring the mortgage to Jones & Williams to be foreclosed, and did he say nothing to them about a fee? Did he ask nothing about what the fee would be for the foreclosure; and if he did not, does that intimate to you that he was acting under some former agreement, or what he believed was an agreement; or did he put the mortgage in the hands of those

lawyers when he foreclosed, without saying anything about what they would charge? I can see how it would be somewhat difficult for you to come to a conclusion. You have to look at the case from all possible points of view, after passing upon the credibility of witnesses, and your test will be not only as to credibility, but as to common sense and observation in the ordinary, commonplace affairs of life. If you come to the conclusion that in 1887 there was no such agreement made (there was no allegation and no testimony, that I remember, that there was an agreement made in 1892), if you come to the conclusion that Mr. Fitzpatrick and Mr. Jones didn't make the agreement which Mr. Fitzpatrick says that he believes was made, then you will consider the testimony as to the value of the services; and on that point you are to consider the testimony of the witnesses who were sworn before you, as to what would reasonably be the value of the services rendered in the foreclosure. I charge you that you cannot give more than $150; that is the amount asked for. I believe you ask for interest, Mr. Allison? Mr. Allison: I think we are not entitled to interest. I will state to you, if you come to the conclusion to give Jones & Williams a verdict, you cannot allow interest at all. This is not a liquidated demand; it is something still to be fixed. You cannot, therefore, give more than $150. You remember some testimony that $175 would have been a reasonable fee. The plaintiffs have asked for no more than $150; they cannot get more than $150, and you may give that or any sum which you think, under the testimony, would have been a reasonable fee for the services. I have been requested by counsel for plaintiffs to charge you the following propositions of law:

First. That this is a suit by Jones & Williams, as plaintiffs, against John H. Fitzpatrick, as guardian, and that the defendant, who relies upon an express agreement as to the amount of counsel fees, must show, by the preponderance of the evidence, that there was such an agreement with the plaintiffs, Jones & Williams. I so charge you—that is the

law.   I am also requested to charge you that if you find that
there was an agreement between Ira B. Jones and John H.
Fitzpatrick in 1887 as to the price to be charged for the
foreclosure of the Massey mortgage, that such contract
could not bind the firm of Jones & Williams in 1892, un-
less you find that J. H. Fitzpatrick called the attention of
Mr. Williams to the contract he had had with Jones in 1887,
and that Mr. Williams acquiesed in the contract made with
Jones in 1887.   I cannot charge you that.   I think I have
charged you all the law applicable to this case, which in
general is just this: Mr. Fitzpatrick is entitled to a verdict
in this case, if he has satisfied you by the preponderance of
the evidence that a contract was made between him and
Mr. Jones in 1887 as to all dealings in connection with his
ward.   If he has satisfied you by the preponderance of the
evidence that such a contract was made, he is entitled to a
verdict.   If, on the contrary, he, assuming the burden of
proof, has not satisfied you by the greater weight of the
testimony that such a contract was made, then he is not
entitled to a verdict, and you will be bound to consider
then the testimony as to the services of the plaintiffs, Jones
& Williams, because there is no denial that they did the
work, and if they did the work in the ordinary course of
business as lawyers, under no such contract as Mr. Fitzpat-
rick claims, then they are entitled to pay for their services,
and you will judge from the testimony what the services
were worth.   You understand, there can be no contract
unless the minds of the parties meet.   One man may think
there is a contract and the other never think so, never
agree.   If such is the case, there is no contract.

The jury rendered a verdict for plaintiffs for $25.   Plain-
tiffs moved for new trial, and the Circuit Judge made the
following remarks in regard to it:

Well, gentlemen, the grounds of the motion for a new trial
are these—one, that the verdict was not responsive to the
evidence as to the value; the other, that the verdict was

against the charge and the law, and the third suggests that two jurors are in some way related. But, as that is not insisted on, there is no material before the Court, no evidence as to relationship—I don't suppose you insist on that, sir? Mr. Allison: "We can get up affidavits on that point." The Court: The question was put to the jurors, if any of them were related to the parties, and none of them answered "yes." No doubt the question ought to have been asked then if they were related to the defendant's *cestui que trust* or ward; that question was not put, and it is too late now to put that question. It is a matter of inadvertance, and I don't think I could take notice now that two of the jury might have been related to the ward. I shall, therefore, devote myself entirely to the other two grounds. I am very well aware that a motion of this nature, if refused, leaves no other means of redress to the party making it; because only an appeal can be taken to the Supreme Court on errors of law, and not as to the weight of evidence, the facts of the case, and I will consider very carefully the motion in that regard; and I do regard it to be the duty of a judge to set the verdict aside whenever he is, in conscience, satisfied that the verdict is not responsive to the testimony. But, is it manifestly against the weight of the testimony, or has injustice been done by the verdict in view of the testimony? I am also aware, on the other hand, that the jury are the supreme judges of the facts of the case.

In this case the jury found a verdict of $25 for the plaintiffs, and the motion is made upon the ground that that was inadequate compensation, and not in accord with the testimony as offered upon the stand; that the jury had come to the conclusion that there was a special agreement between Mr. Fitzpatrick and Mr. Jones. A jury consists of twelve men; and when they went into that room it is perfectly possible that a minority of them, judging by their verdict, may have believed that there was a special agreement, and that Mr. Jones was entitled to nothing more than tax costs;

but that minority may have surrendered their view to the majority, who must have taken the view that there was no such an agreement; that that minority may have influenced the majority of the jurors to lessen the amount—there is no law or rule to deny the jury that right; they are not only judges of the facts, but they are their own judges and counsellors as to how they arrive at their verdict; and even if the jury arrive at a verdict by compromise, unless there is glaring inconsistency between the evidence and the verdict, it cannot be disturbed on that ground. It is true, from my recollection of the evidence, that the only evidence of the value of the services limits the value to a minimum of $150, that $150 was a reasonable fee; at the same time, that testimony was the testimony of experts, giving their opinion as to the value of services, and not the testimony of witnesses as to the fact. Now, the jury is entitled, if it pleases, to disregard the testimony of experts; it is not bound by the opinions given on the stand only—they can assert their own opinions against the opinion of a lawyer or any other expert; the testimony of an expert is only useful when they desire to use it; they can disregard it by the rule of evidence; they are not compelled to be guided by it; if they need the use of expert testimony, they can use it. If they are satisfied with it, they can take it, and the testimony as to services being a matter of opinion, the jury may consider it or may not; they have a perfect right to consider the value of services according to their own estimates of the services; and, in addition to that, the testimony as to the money value is not the only evidence—they have the evidence as to what the work was, the amount of litigation. An intelligent jury, the foreman a very intelligent man, no doubt they, some of them, had had experience in these matters, and it may have run through their minds that there was a certain amount of work to be done. True, the case was in court as to one hundred and some odd dollars, there was some litigation, and although the lawyers and judges may have said the services were not worth less than $150,

the jury may have thought $25 was sufficient pay, and yet not come to that conclusion from the evidence; and they had a perfect right to reject the testimony of the experts—it is their prerogative. I am frank to say, if the testimony had been taken before me to fix the fee as referee or judge, I would have considered myself bound by the testimony of counsel; would have thought $150 a reasonable fee. But there was another question involved— there was the question, "Was there an agreement or not?" and, under that view, it is possible that those who believed that there was such an agreement may have arrived at the value of services by compromise. It is well, of course, that litigation should cease and— Mr. Allison: Your Honor, will you permit me to say a word? We take this ground, and took it before in this motion for a new trial—we take this line: that the contract that Capt. Fitzpatrick says was agreed to in 1887, was not binding on the firm of Jones & Williams, if made at all, and couldn't bind the firm of Jones & Williams, couldn't bind T. Y. Williams, unless brought to his attention, and he agreed to it. The Court: Mr. Allison, you framed a request to charge on that line, which I declined to charge, for this reason: Not only that Mr. Fitzpatrick brought the mortgage to Jones & Williams to be foreclosed by Jones & Williams, but there is evidence that he knew that he was bringing it to them as a partnership, and that he was not simply bringing it to Mr. Jones, as he had done in 1887. Mr. Allison: The record showed that it was Jones & Williams, and I bring this up for you to pass on that legal question at this point. The Court: Your request was: "If you find that there was an agreement between Ira B. Jones and John H. Fitzpatrick in 1887 as to the price to be charged for the foreclosure of the Massey mortgage, that such contract could not bind the firm of Jones & Williams in 1892, unless you find that J. H. Fitzpatrick called the attention of Mr. Williams to the contract he had had with Jones in 1887, and that Mr. Williams acquiesced in the contract made with Jones in 1887." You see in that there

was a charge on the facts, "called the attention of Mr. Williams to the contract which he had had in 1887." You see, it takes for granted there was a contract. But still, even if you had said here, "to the contract he alleged to have had," I couldn't have charged this without adding, "and unless, also, Mr. Williams brought to the attention of Mr. Fitzpatrick that he was a partner in Jones & Williams." Mr. Allison; Our purpose is to get you to pass upon that law as applicable to the facts of this case. The Court: I am very much impressed with the argument for a new trial, and I can understand how both sides are dissatisfied with this verdict, but I think the verdict must stand. I don't see sufficient grounds to disturb it. The jury was an intelligent jury, and it was very evident that they had great difficulty in making up their minds between the two sides. They seemed to have given the preponderance to Mr. Jones' side, that there was no contract, and yet there must have been some who thought the other way, and they agreed upon this exceedingly small amount for such services. But they were the supreme judges for value, and while I myself would certainly have allowed a fee much larger than $25, yet I cannot say that I feel justified in disturbing the verdict; so I refuse the motion. No proof, by affidavit or otherwise, was made that any juror was related to defendant's ward; nor was any statement made as to what relationship, if any, existed between any juror and defendant's ward; nor was any statement made or proof given that the knowledge of any such alleged relationship was acquired after the empanelling of the jury. The sole basis for the motion for new trial, on the ground of alleged relationship of jurors, was the verbal statement by counsel that they were informed that two jurors were related to defendant's ward; but counsel did not undertake to vouch for the fact, nor to state the degree of relationship. And it was denied by defendant that any juror was related to defendant's ward.

The following are the exceptions or grounds of appeal from the Circuit Court to the Supreme Court:

4—47

I. Because the Circuit Judge erred in refusing to charge the jury, when requested by plaintiffs' attorneys, as follows: "If you find that there was an agreement between Ira B. Jones and John H. Fitzpatrick in 1887, as to the price to be charged for the foreclosure of the Massey mortgage, that such contract could not bind the firm of Jones & Williams, unless you find that J. H. Fitzpatrick called the attention of Mr. Williams to the contract he had had with Jones in 1887, and that Mr. Williams acquiesced in the contract made with Jones in 1887."

II. Because he erred in charging the jury as follows: "Mr. Fitzpatrick is entitled to a verdict in the case, if he has satisfied you by the preponderance of the evidence that a contract was made between him and Mr. Jones in 1887 as to all dealings in connection with his ward;" whereas, he should have charged, if there was an agreement between Ira B. Jones and John H. Fitzpatrick in 1887, before the partnership of Jones & Williams, that Jones & Williams would not be bound thereby, unless the firm, or one of them after the forming of the partnership, assented to such agreement.

III. Because he erred in charging the jury as follows: "If you come to the conclusion that Mr. Fitzpatrick and Mr. Jones didn't make the agreement which Mr. Fitzpatrick says and believes was made, then you will consider the testimony as to the value of the services." This was erroneous, in making the consideration by the jury of the evidence as to the value of services dependent on their first finding that Fitzpatrick and Jones (not Jones & Williams) did not make the alleged agreement; it was furthermore erroneous, in that it was a comment on the testimony and sincerity of Fitzpatrick, as it was an expression of the Court that Fitzpatrick was sincere, and believed what he had testified to.

IV. Because the Circuit Judge erred in commenting on the facts to the jury as follows: "I can not help you much, gentlemen, in considering the facts in this case. They are

very few.   You are to ask yourselves: Was this foreclosure
suit, which was instituted in 1892, was it made under
agreement made in 1887, and that agreement was that there
was to be no attorney's fees paid by Fitzpatrick?   Was
there such an agreement?   If so, you may ask, was any-
thing said by Fitzpatrick in 1892 about that agreement in
1887?   Did he remind Jones, or Jones & Williams, of that
agreement in 1892?   If he did not, was that because there
was no such agreement, or was it simply because he forgot?
Or you may ask, is it possible that he may have inquired
or believed there was such an agreement, while there was
none?   If there was no such agreement, did Fitzpatrick
bring the mortgage to Jones & Williams to be foreclosed,
and did he say nothing to them about the fee?   Did he ask
nothing about what the fee would be for the foreclosure? and
if he did not, does that intimate to you that he was acting
under some former agreement, or what he believed was an
agreement? or did he put the mortgage in the hands of these
lawyers when he foreclosed, without saying anything about
what they would charge?   I can see how it would be some-
what difficult for you to come to a conclusion."

V.   If the jury reached the conclusion that the testimony
was not sufficient to establish the alleged agreement between
Mr. Fitzpatrick and Mr. Jones in 1887, which they were
bound to do, to give the plaintiffs the small verdict of $25,
then, it is submitted, the Circuit Judge erred in law in re-
fusing plaintiffs a new trial, for the uncontradicted testimony
showed that the services rendered by plaintiffs were worth
not less than $150.

VI.   Because the presiding Judge erred in law in allowing
the verdict to stand and refusing a new trial, when there
was not a particle of testimony to reduce it below $150—
nothing but caprice.

VII.   Because there was no evidence to sustain the verdict
reducing the value of the services of Jones & Williams to
$25, and the presiding Judge erred as a matter of law in
refusing a new trial.

VIII. Because the presiding Judge erred as a matter of law in refusing a new trial, upon the ground merely "that a minority of the jury, judging by their verdict, máy have believed that there was a special agreement, and that Mr. Jones was entitled to nothing more than taxed costs; that the minority may have surrendered their view that there was no such agreement; that the minority may have influenced the majority of the jurors to lessen the amount, and that there was no law or rule to deny the jury that right."

IX. Because the presiding Judge having stated, "that if the testimony had been taken before him (me) as referee or judge, he (I) would have considered himself (myself) bound by the testimony of counsel, would have thought $150 a reasonable fee," erred, notwithstanding, in refusing a new trial, on the ground that there was another question involved, viz: "Was there an agreement or not?" and that under that view it is possible that those who believed that there was such agreement, may have arrived at the value of the services by compromise." See reference in order of Court refusing new trial for his reasons.

X. Because he erred in refusing a new trial on the ground that the jury were the supreme judges of the value of the services of plaintiffs.

XI. Because the presiding Judge erred in permitting the verdict of the jury to stand, on the ground that the jury had the right to disregard the testimony of experts as to the value of plaintiff's services, and had the right to consider the value of the services according to their own estimate thereof.

XII. Because the presiding Judge erred in holding that, on the motion for a new trial, it was too late to consider the question whether two of the jurors were related to the real defendant, Mary A. Kibler, the ward of John H. Fitzpatrick, guardian; that the failure of the Court to ask if any juror was related to the ward was a mere inadvertence, and that it was then too late for him to take notice thereof.

*Messrs. R. E. & R. B. Allison*, for appellant, cite: *Partnership:* 17 A. & E. Ency., 987; Livingston v. Cox, 6 Pa. St., 360; Cogdan, Hazzard & Co. v. Morgan, 13 S. C., 194; Briggs & Co. v. Hubert & Co., 14 S. C., 620; Anderson & Co. v. Holmes & Durham, 14 S. C., 166. *New Trial:* Flennikan v. Scruggs, 15 S. C., 92; Brastfied v. Brown, 4 Rich. Law, 298; City Council v. Talk, 3 Rich., 299; Wightman v. Butler, 2 Speer, 359; Dogan v. Ashley, 1 Strob., 435; Verdier v. Trowell, 6 Rich., 169; Grinke v. Houseman, 1 McM., 132; Wood v. R. R., 19 S. C., 579; State v. David, 14 S. C., 430; Steel v. R. R., 11 S. C., 591.

*Mr. Ernest Moore*, contra, cites: *Requests:* Taylor v. Dominick, 36 S. C., 308; Mars v. Wright, 22 S. C., 585; Gunter v. Man. Co., 15 S. C., 444. *Partnership:* 17 A. & E. Ency., 1116; Lucas v. Coulter, 104 Ind., 81; Kerney v. Snodgrass, 12 Ore., 311; Shoemaker v. Bernard, 2 Lea (Tenn.), 358; Russell v. Bardes, 14 N. Y. S., 473. *Charge:* Fitzsimmons v. Guanahani Co., 16 S. C., 192; Richards v. Munro, 30 S. C., 284, 290; see, also, Simmons v. Bank, 41 S. C., 178; Evans v. Chamberlain, 40 S. C., 104; Hiott v. Pierson, 35 S. C., 611; Bowen v. R. R. Co., 34 S. C., 218, 236; Fogette v. Gaffney, 33 S. C., 303, 306, 311; Fowler v. Allen, 32 S. C., 229, 235; Lynn v. Thompson, 17 S. C., 137; Benedict v. Rose, 16 S. C., 629; Archer v. Anderson, 20 S. C., 495; Whaley v. Bartlett, 42 S. C., 455. *New Trial:* Altee v. R. R., 21 S. C., 851; Warren v. Logan, 12 S. C., 45; Finch v. Finch, 21 S. C., 342; Sheppard v. Lake, 2 Bail., 576; Stickley v. Ins. Co., 37 S. C., 56, 71; Webber v. Ahrens, 36 S. C., 587; Hyrne v. Erwin, 23 S. C., 231; Steel v. R. R., 11 S. C., 589; Brickman v. R. R., 8 S. C., 173; Blakely v. Fraser, 20 S. C., 144. *Experts:* Chandler v. Barrett, 99 Ann. Dic., 707; 1 Green. Ev. (14 ed.), sec. 10, note a, sec. 440, notes 2 and b; Head v. Hargrove, 105 U. S., 45; 7 Am. & Eng. Enc. of Law, p. 516; Congress v. Edgar, 99 U. S., 645, 659; Schweinger v. Raymond, 105 N. Y., 648; Von Valkenburg v. Von Valkenburg, 90 Ind., 443; Stone v. N.

W. R. R., 33 N. W. Rep. (Mich.), 24; Atchison v. Thul, 32
Kans., 255; McGregor v. Armill, 2 Iowa, 30; Tatum v. Mohr,
21 Ark., 349; Chandler. v. Barrett, 21 La. Ann., 58. *Rela-
tionship of Jurors:* Todd v. Gray, 16 S. C., 635; Pearson v.
Wightman, 1 Mill, 336; Josey v. R. R. Co., 12 Rich., 133;
Bridger v. R. R. Co., 27 S. C., 456; McCarty v. McCarty,
4 Rich., 594; Pulaski v. Ward, 2 Rich., 122.

July 10, 1896. The opinion of the Court was delivered by

MR. CHIEF JUSTICE McIVER. The facts out of which
this controversy arose, so far as they are undisputed, may
be stated as follows: The defendant, having funds of his
ward to invest, employed Mr. Jones, one of the plaintiffs,
as his legal adviser in making such investments, the un-
derstanding being that the expense of investigating the
titles of property offered as security, and preparing the
necessary papers, should be borne by the borrower of the
money. In pursuance of this arrangement, a loan of the
sum of $2,000 was effected, some time in the summer of
1887, to one Massey, out of the funds of defendant's ward,
which was secured by a mortgage of real estate, drawn and
executed in the office of Mr. Jones—the other plaintiff, Mr.
Williams, not then being a partner of Mr. Jones, but acting
as a clerk in his office. Soon afterwards, however, a part-
nership in the practice of law was formed between the
plaintiffs, which continued until the 1st of January, 1895.
After the lapse of about five years from the making of said
loan, the money not being paid, the defendant placed the
mortgage in the hands of Jones & Williams, with instruc-
tions to foreclose the same. In accordance with these in-
structions, the plaintiffs, as attorneys at law, some time in
the year 1892, commenced an action against Massey for
foreclosure of the mortgage, to which Massey appeared and
made defenses, which, however, were not sustained, and
judgment of foreclosure was rendered, under which the
mortgaged premises were sold, yielding a sum of about
$3,100, which being insufficient for the payment of the

mortgage debt and costs, judgment was entered for the deficiency. Some time in the year 1893, the plaintiff, Jones, called upon the defendant for a settlement of the fee of Jones & Williams in the action for the foreclosure of the Massey mortgage. The defendant denying that he owed the plaintiff any fee, and refusing to pay the same, this action was commenced on the 15th of November, 1893, to recover the sum of $150, plaintiffs alleging that their professional services were reasonably worth that sum of money. The defendant, in his answer, set up two defenses: *First.* A denial that he. owed the plaintiffs anything at all, together with a denial that the professional services alleged to have been rendered him by the plaintiffs were reasonably worth the sum claimed. *Second.* That by express agreement between the plaintiff, Jones, and the defendant, made at the time (1887) when said Jones was first employed as his legal adviser, it was understood that, in case it became necessary to foreclose any mortgage, no charge, beyond the tax costs, was to be made for foreclosing the mortgage, and that the tax costs in the action for the foreclosure of the Massey mortgage had been paid to, and received by, the plaintiffs. The defendant testified distinctly that there was such an agreement as that set up in his answer, and the plaintiff, Jones, testified positively that there was no such agreement, while the plaintiff, Williams, testified that he knew nothing of any such alleged agreement, and never heard of it until a short time before the commencement of this action. So that the controlling issues in the case were, *first,* whether anything was due to the plaintiffs for their professional services in the action for the foreclosure of the Massey mortgage; and, *second,* if so, what was the value of such services; for it is not claimed by the plaintiffs that there was any special contract fixing the amount to be allowed them as compensation for their services, and their claim rests alone upon a *quantum meruit.*

Upon the close of the testimony the case was submitted to the jury, under the charge of his Honor, Judge Benet,

which is set out in the "Case," and which should be incorporated in the report of this case, and a verdict was rendered in favor of the plaintiffs for the sum of $25. Thereupon the plaintiffs moved for a new trial on the minutes of the Court, basing their motion on the following grounds: 1st. "Because the verdict was against the preponderance of the evidence. 2d. Because the verdict was contrary to the charge. 3d. Because it is alleged that two jurors in the cause were related to the defendant's ward." This motion was refused, for the reasons set forth in the remarks of the Circuit Judge found in the "Case," which should likewise be incorporated in the report of this case; and judgment having been entered upon the verdict, plaintiffs appeal upon the several grounds set out in the record, which should also be incorporated in the report of the case.

Inasmuch as the jury were explicitly instructed that unless the defendant had, by the preponderance of the evidence, established the agreement set up in the answer, they must find a verdict for the plaintiffs, as it was not denied that they had rendered the services upon which their claim was based; and inasmuch as the jury did find a verdict in favor of the plaintiffs, we are bound to assume that the jury concluded that no such agreement as that set up by defendant had been established. This being so, we cannot see the pertinency of the questions sought to be raised by the first four grounds of appeal; for even assuming that there was error in any of the points there suggested (which, however, we are not to be regarded as holding), we cannot perceive how such errors, if any there be, could prejudice the interests of the plaintiffs. If the jury concluded, as their verdict manifestly shows, that there was no such agreement as that relied on by defendant had been established, the plaintiffs, certainly, have no right to complain of anything said to the jury as to such alleged agreement. The question whether there was such an agreement was a pure question of fact, which we have neither the power nor the disposition to consider. But it

may not be amiss for us to say, that we can very readily see how the apparent conflict between the witnesses may be reconciled without the slightest imputation upon any one. There is no doubt of the fact, that the original understanding between Mr. Jones and Mr. Fitzpatrick was, that the former should make no charges against the latter for his professional services, in investigating the titles to property offered as security, drawing the papers necessary, and such legal advice as might be incident thereto, and that he would look to the borrower for his compensation for *such services;* and it is easy to understand how Mr. Fitzpatrick, after a lapse of five years, might honestly suppose that such understanding extended to any professional services which Mr. Jones might, thereafter, be called upon to render, in enforcing the payment of a mortgage debt.

Exceptions five to eleven, both inclusive, all relate to the second general question, with respect to the value of the services upon which the plaintiffs base their claim.

2    In the absence of any special contract fixing the value of the services, the plaintiffs, as in other like cases, have been compelled to resort to the opinions of witnesses as to the value of the services rendered. But it will be observed that such testimony is not the statement of any *facts*, but simply the expression of *opinions*, to aid the jury in forming their own opinion as to the value of the services; which, after all, is the final test of such value. It is the duty of the jury, after hearing all the testimony, to form their own conclusion as to the value of the services sued for; and, as the Circuit Judge significantly points out, the jury had before them not merely the opinions of the expert witnesses, but also the nature and amount of the services charged for, and from all these circumstances they have reached the conclusion expressed by their verdict. Now, while the Circuit Judge had the power to set aside this verdict, as he plainly recognized that he had, and while he, doubtless, would have reached a different conclusion as to the value of the services from that reached by the jury, if

the question had been originally submitted to him, yet he certainly was not *bound* to set aside the verdict for any such reason, and there was, clearly, no error of law on his part in refusing to do so; and that is the only question which we are called upon to decide. In both of the cases of *The State* v. *David*, 14 S. C., 428, and *Wood* v. *Railway Co.*, 19 S. C., 579, the Circuit Judge underrated his *power* to set aside a verdict in such cases as were there presented, which was held to be a clear *error of law*. But where, as in the case of *Steele* v. *Railroad Co.*, 11 S. C., 589, the Circuit Judge refused a motion for a new trial, based upon the ground that the verdict was contrary to the preponderance of the evidence, and because the damages were excessive, this Court held that it had no power to interfere. See, also, *State* v. *Cardoza*, 11 S. C., at page 222, which has since been repeatedly recognized. The rule is undoubtedly well settled, that a motion for a new trial upon the ground that the verdict is against the preponderance of the evidence, is addressed largely to the discretion of the Circuit Judge; and where he refused to substitute his own view of the evidence for that taken by the jury, he commits no error of law, and hence this Court has no jurisdiction to reverse his action.

The tenth and eleventh grounds of appeal, however, impute to the Circuit Judge distinct errors of law—tenth, in holding "that the jury were the supreme judges of the value of the services of the plaintiffs." Inasmuch as the question as to what was the value of the services of the plaintiffs was a pure question of fact, of which the jury were the exclusive judges, it is difficult to perceive any foundation for the error here imputed.

Eleventh, in holding "that the jury had the right to disregard the testimony of experts as to the value of plaintiffs' services, and had the right to consider the value of the services according to their own estimate thereof." That there was no error in this, is conclusively shown by a case cited by respondent's counsel, *Head* v.

*Hargrave*, 105 U. S., 45, where it was held: "In an action
for legal services, the opinions of attorneys as to their value
are not to preclude the jury from exercising their own know-
ledge and ideas on the subject.    It is their province to weigh
the opinions by reference to the nature of the services ren-
dered, the time occupied in their performance, and other
attending circumstances, and by applying to them their
own experience and knowledge of the character of such
services.    The judgment of a witness is not, as a matter of
law, to be accepted by the jury in place of their own."    In
that case the following request to charge was said by the
Court to correctly present the law of the case: "Determining
the value of the plaintiff's services, the jury are not bound
by the testimony of the expert witnesses; that testimony
may be considered by the jury; but if in their judgment
the value fixed by those witnesses is not reasonable, they
may disregard it, and find the amount which, in their judg-
ment, would be reasonable."    Mr. Justice Field, in delivering
the opinion of the Court, takes care to draw the distinction
between a jury acting upon material *facts*, material to the
issue in the case, resting in their own private knowledge,
and applying their own knowledge as a test of the value of
opinions given by expert witnesses.    See, also, 7 Am. &
Eng. Ency. of Law, 516, and the cases there cited.    As to
the ground taken for new trial, that the verdict was contrary
to the charge of the Circuit Judge, we do not think it is well
founded.    The case turned mainly upon questions of fact;
and as to such matters the Circuit Judge did not undertake,
and could not have undertaken, to give the jury any in-
structions, but very properly left such questions entirely to
the jury.    So, too, we see no ground whatever for the com-
plaint that the Circuit Judge violated the provisions of the
Constitution in charging upon the facts; and in this respect
the charge as set out in the "Case" furnishes its own vindi-
cation.

It only remains to consider the point raised by the
twelfth ground of appeal.    It would be sufficient to say

that the ruling of the Circuit Judge as to this point is incorrectly represented (no doubt unintentionally) in this ground. The Circuit Judge did not hold that it was too late *to consider the question* on a motion for a new trial; but what he did say, after stating that the jurors might and should have been asked whether they were related to any of the parties interested, before the jury was organized for trial of the case, was, that it was then too late *to put that question*, as it manifestly was. But even if he had made the ruling imputed to him, the cases of *Pearson* v. *Wightman*, 1 M. Con. Rep., 336; *Josey* v. *Rail Road Co.*, 12 Rich., 134, and *Todd* v. *Gray*, 16 S. C., 635, are quite sufficient to sustain such a ruling; especially where it was not made to appear that the objection to the juror was not known to the party in time to interpose it at the proper time. Indeed, the remarks made by the Circuit Judge in refusing the motion for a new trial on this ground, seems to us amply sufficient to vindicate the correctness of his ruling. See *Bridger* v. *R. R. Co.*, 27 S. C., 456. The statement made by counsel for appellants in his argument here, that "no affidavits were submitted and no proof offered as to this relationship, because the Judge distinctly announced that he could not take notice of "this matter then, that it was too late," cannot avail the appellants, because the Circuit Judge did not and could not have made any such announcement until the motion was submitted; and it was incumbent upon appellants to base their motion upon affidavits to sustain the facts upon which they rested their claim to the motion, which should have been served before the motion was submitted. It seems to us clear, therefore, that the twelfth ground of appeal cannot, in any view of the matter, be sustained.

Having reached the conclusion that the judgment appealed from must be affirmed, it becomes unnecessary to consider the grounds upon which respondent has given notice that he will seek to sustain the judgment; though we are not to be considered as recog-

nizing the rights of respondent to sustain a judgment *based upon the verdict of the jury* upon any grounds not submitted to the jury. See *Bonham* v. *Bishop*, 23 S. C., 96.

The judgment of this Court is, that the judgment of the Circuit Court be affirmed.[1]