# John Larkin and others v. Leander S. Butterfield and another.

*Contract construed : Several obligation.* Where four persons who did not buy as partners, agreed to pay one thousand five hundred dollars for a printing press and materials, in installments, "each of the said first parties to be held personally responsible for one-fourth of the said fifteen hundred dollars," this was held to create a several and not a joint obligation, and none of the promisors was bound to pay more than his share of one-fourth.

*Several obligation : Joint action.* A joint action having been brought, the verdict should have been for the defendants, as not jointly liable to suit.

*Heard April 24. Decided April 23.*

Error to Superior Court of Detroit.

*Pond & Brown,* for plaintiffs in error.

*Moore & Griffin,* for defendants in error.

CAMPBELL, J.

Butterfield & Burr, partners under the style of the Detroit Paper Company, sued plaintiffs in error for the price

of certain printing material, which the latter had agreed to pay for when purchased, under an agreement of the following purport:

The parties of the first part "agree to pay said second party the sum of fifteen hundred dollars, in manner hereinafter specified, for a press and printing material, to be selected by W. H. H. Bartram, and to be of the full value of fifteen hundred dollars, and to be delivered at Midland City, Michigan, by said second party, payment to be made by said first parties in four equal installments of three hundred and seventy-five dollars each, as follows: The first installment payable January 1, 1872; second installment April 1, 1872; third installment July 1, 1872; and the fourth installment October 1, 1872; payments to be made at the bank of C. E. & G. Will Ball, Midland City, with interest, to be computed from January 1, 1872, at the rate of ten (10) per cent. per annum, *each of the said first parties to be held personally responsible for one-fourth ($\frac{1}{4}$) of the said fifteen hundred dollars.* The said second party agrees to deliver to said parties of the first part such press and material as aforesaid, at the place aforesaid, as soon as possible."

The property was received at Midland City by Bartram, to whom it was directed. Questions arose upon the trial, whether defendants had assented to or ratified this delivery, and in connection with that subject, concerning the admissibility and bearing of certain testimony. The most important question, however, preliminary to all the rest, was, whether defendants below had become liable jointly for the purchase price named.

In determining such a question, where the contract is in writing, there can be no technical rule for disposing of it. The intention of the parties must be followed, as it is to be drawn from the entire contract. The cases cited on the argument to illustrate the matter, all agree in this result, and each contract must be determined according to its own tenor.

The contract makes the persons named in it joint purchasers; but this would not prevent any arrangement which they might choose to make among themselves as to the real ownership. The purchase price is to be paid by them, the property is to be delivered to them, and, except for a single clause, no ambiguity or controversy could arise affecting their joint liability. That clause, following in one sentence the terms of payment, declares "*each of the said parties to be held personally responsible for one-fourth of the said fifteen hundred dollars.*"

The plaintiffs in error claim that this fixed the extent of their respective personal liability to their vendors. The latter claim it was merely to determine their liability to contribute equally among themselves.

We think the obvious meaning of this clause was to fix a several and limited liability to the vendors.

It could in no way concern the latter how the purchasers measured their mutual interests. If this paper was designed to regulate those, the clause was unnecessary, for it merely declared what would have been implied without it. The written contract was made for the primary purpose, at least, of defining the terms of purchase and sale. There are but two parties to it,—the vendors and the purchasers. It contains nothing to indicate what use is to be made of the property by the purchasers. They do not buy it as partners. If they were partners, their relations would have depended on the terms of partnership. If not partners, then the use of it must have been determined by some special agreement, verbal or written, in which their mutual relations would necessarily be determined, and their mutual liability fixed. It is difficult to imagine any circumstances which would make it natural or desirable to determine by itself the one question of mutual responsibility, leaving all their more important relations as to the control and use of the property to be fixed by a separate agreement. Neither is there any very plain reason presented why such a matter should be

introduced at all into a contract of purchase when it in no way concerned the vendor.

The natural inference to be drawn from the paper is that these persons desired to purchase a press for some purpose towards which each was willing to furnish one-fourth of the expense, and no more. It seems to be drawn up on the same plan which is often adopted on a more general basis of subscriptions for some common purpose, where no subscriber contemplates any partnership or joint obligation, but each is willing to pay his fixed quota. In such a case, where the purchase is made in the joint names of several persons, such a clause would be absolutely necessary to carry out the common design, and to save the associates from becoming responsible jointly for the entire cost. Its use under such circumstances is common and its design manifest.

Reading the contract as a whole, we think it is not open to the construction claimed by the defendants in error. There is no joint undertaking, and no joint liability. Each of the signers is responsible separately, and suit should have been brought on that theory.

It follows from these views that the jury should have been directed to find a verdict for the defendants below. The whole action failing, the remaining questions are of no consequence.

Judgment must be reversed, with costs, and a new trial granted.

CHRISTIANCY and COOLEY, JJ., concurred.

GRAVES, CH. J., did not sit in this case.