<hr/>

H. C. Moore *v.* L. H. Holt and others.

October Term, 1876.

Rescission for fraud of one joint contractor. — A rescission by one of four contractors and partners of a joint contract for the purchase of mill

property, improving and running the same, cannot be had for the fraud of one of the contractors, the other two not being implicated, especially after the partnership had been carried on for two years.

*Helms & Hicks*, for complainant.
*J. G. Wallace* and *J. Baxter*, for defendants.

THE CHANCELLOR : — This bill was filed for the purpose of rescinding a contract of sale and partnership ; and if the complainant be not entitled to such relief, then for a dissolution of the partnership, and for a partnership account.

In the month of March, 1874, the complainant and the defendants, L. H. Holt, W. P. May, and H. F. Carmack, agreed to purchase from one W. A. Davis a mill and machinery which had been owned and run by him on a farm in Williamson County. The contract was that they should pay for the mill and machinery $6,000 ; that Davis was to purchase a new site for the mill from the complainant, at Brentwood, in Davidson County, build thereon a mill-house, transfer the machinery to the new building, and furnish the water necessary to supply the boiler by sinking a well, the cost of all which, it was supposed, would be about $1,500, making the investment equal to $7,500. The evidence leaves it uncertain whether Davis had the option of becoming a partner, or was to be a partner on the completion of the work, in which event the share of each partner would be $1,500. It is certain, however, that the agreement was that if the expenses of the transfer fell under $1,500, Davis was to pay the difference, and if it exceeded that amount by a few hundred dollars, he was to be paid the difference. Davis did buy from the complainant four acres of ground, at the price of $400, at Brentwood, and gave his note for the purchase-money, with L. H. Holt as security, and the complainant gave him a bond for title. At the same time, each of the four contracting parties gave Davis his note for $1,500, due the succeeding January 15th. A plan was prepared for the mill-building, which was larger

than the old mill-building, and agreed upon by all parties. Before this, it was supposed that the cost would fall below the sum of $1,500, as above. Afterwards, and during the progress of the work, it was ascertained that the cost would exceed this sum, and the parties agreed to allow Davis " a few hundred dollars " to cover the excess. What the parties meant by " a few hundred dollars " was left as uncertain as the size of the proverbial piece of chalk. The cost did exceed the estimate " a few hundred dollars," if not more. The mill was completed for grinding corn and wheat, a well dug for water, and business commenced on or about August 25, 1874. A new saw-mill was added, at a cost of some $800, and a shed built to contain the machinery. The weight of the proof is, that about the time the company began the partnership business Davis had become insolvent, and it was found that his name, while it would give no strength to the firm, might expose the business to trouble from his creditors. It does not appear that any distinct agreement was come to by the parties on the subject. But it does appear that on September 10, 1874, " the company " — to use the language of the bill — borrowed, for the purpose of setting the mill to work, $3,000, and gave their note for the amount, " signed by all four of the parties composing the firm, but not Davis ; " that this note was renewed from time to time, and other notes given, signed by the four parties, but never by Davis ; that W. P. May, who was chosen president of the company, as early as August, 1874, made settlements with and payments to Davis for work, as if he were not a partner ; that complainant was appointed president of the company about February 1, 1875, and made similar payments to Davis ; that Davis never attended any meetings of the partners, and died in March, 1875, insolvent, and his personal representative is not made a defendant to this bill. The complainant charges that the defendant L. H. Holt bought Davis's interest. If this was so, it might make Holt liable for two shares, instead of one share, in the settlement of

the partnership business ; but, in any event, it is clear Davis never was a partner in person after the business actually begun. There being no personal representative of Davis before the court, it is also clear that a rescission of the original contract of sale and purchase of the mill property is impossible as between him and complainant, nor can the court make any decree touching the rights of his estate in the premises.

The bill alleges that in February, 1874, Davis being then insolvent, the defendant L. H. Holt became the owner of a certain debt against Davis, held by one Spencer, secured by mortgage on the lands of Davis on which the mill was situated, and of other debts, and about that time "purchased said mill from said Davis," and agreed to allow him a credit on his claims for whatever amount Davis could sell the mill, and that he did receive the proceeds of the sale, and that the facts only recently came to complainant's knowledge. The substance of the charge is that the sale of the mill to complainant and others, although in form by and in the name of Davis, was really made by Holt. If the facts were as thus stated, they would have shown that Holt, while ostensibly a buyer, with the complainant and defendants May and Carmack, was in fact the seller, receiving the consideration paid. The existence of such a state of facts, if not fraud *per se*, would certainly have been strongly persuasive of fraud. The evidence does present the transaction in a somewhat questionable shape, but, upon a careful analysis, it fails to make out the charge.

[The Chancellor, after reviewing the facts, proceeded thus :]

It need scarcely be added that there is nothing in any other ground assumed by the bill after two years of active partnership business, during one of which complainant was himself president. *Jennings* v. *Broughton*, 5 De G. M. & G. 126. And even if there were such proof, this is clearly not a case for rescission. It is impossible to place the parties *in statu quo*. The contract was a joint one by the pur-

chasers, not merely for the mill and machinery, but for its removal at the cost of "a few hundred dollars" over $1,500, and the formation of a partnership. How can such a contract be rescinded because of the fraudulent conduct of one party to it, when none of the others are impli-cated in the fraud? The contract is an entirety, and can only be rescinded as an entirety. It is not like the case of the purchase of a chattel by several persons, as was *Larkins* v. *Butterfield*, 29 Mich. 254. Nor is it like the case of *Charlesworth* v. *Jennings*, 34 Beav. 96, and the case supposed by Judge Wright in *Phillips* v. *Hollister*, 2 Coldw. 272, of the purchase, by the complainant, of the interest of some of the partners in a partnership business, and the formation of a new partnership with the other mem-bers, where the two transactions are severable. It would be more like the actual case of *Phillips* v. *Hollister*, where, although there was clearly a fraudulent combination, it was. found impossible to rescind, one of the new partners being, like the complainants, innocent of wrong. I know of no principle upon which a rescission of an entire contract for the fraud of one of the joint contractors can be rested, all the other contractors being innocent of wrong. *A fortiori*, where the contract involves a partnership which has been carried on for two years. It is impossible to relieve the complainant from his share of the common burdens, so far as his innocent partners are concerned, and this would be the legal consequence of a rescission. It is equally impos-sible to relieve him from liability to third persons, incurred by holding himself out as a partner. If there were fraud in such a case, the remedy would be at law, for damages. against the wrong-doer. *Holt's Case*, 22 Beav. 53; *Jennings* v. *Broughton*, 5 De G. M. & G. 132. Or equity might, in adjusting the rights of the partners *inter se*, give the injured party relief, as was done in *Phillips* v. *Hollister*. The right to rescission, the only question before us, there-fore fails.

The bill discloses no ground for any rescission, either of

the original contract with Davis or of the agreement of partnership, as between complainant and the defendants May and Carmack. These defendants are not charged with any wrongful acts, or supposed fraudulent misrepresentations and concealments. The prayer for relief is rested "upon the ground that he (complainant) was induced to take an interest in the same by fraud and misrepresentation of the said L. H. Holt and W. A. Davis." As it is impossible to give the relief prayed as to Holt, without interfering with the rights of the complainant's innocent associates, it cannot be granted even if the "deception, fraud, and misrepresentation" of Holt be conceded as charged.