## CORNELIUS v. SMITH.

No. 9312—Opinion Filed Oct. 22, 1918.

(175 Pac. 754.)

1. **Attorney and Client—Action for Contingent Fees—Measure of Skill and Knowledge.**

Where, in an action to recover attorney's fees under an oral contract of employment stipulating that the amount of such fee should be contingent upon the success of the litigation, one ground of defense was based upon the contention that there was no consideration for such contract, inasmuch as the services claimed to have been rendered did not require skill, diligence, or legal knowledge. Held, that the skill, diligence, and legal knowledge of counsel exercised in a lawsuit should be measured in a large degree by the result of the litigation, and not by the number of pleadings filed, or their length, or the number of times counsel appeared in court, or the number of hours consumed in oral argument.

2. **Appeal and Error—Excessive Verdict—Attorney's Fees—Vacation.**

A verdict rendered in such action should not be vacated on the ground that it is excessive, unless it clearly appears that the same is so excessive as per se to indicate passion or prejudice on the part of the jury.

3. **Attorney and Client—Amount of Fees—Evidence—New Trial.**

A consideration of the entire record in this

case does not support the contention that the judgment appealed from is so excessive as to require this court to vacate the same and to order a new trial.

(Syllabus by Galbraith, C.)

Error from District Court, Creek County; Ernest B. Hughes, Judge.

Action by J. T. Smith against Ira E. Cornelius. Judgment for plaintiff, and defendant brings error. Affirmed.

McDougal, Lytle, Allen & Hodges and Smith & Walker, for plaintiff in error.

J. T. Smith, for defendant in error.

Opinion by GALBRAITH, C. This is an appeal from the judgment of the trial court, rendered upon the verdict of a jury returned in an action to recover an attorney's fee based on an oral contract of employment. Smith, as plaintiff in the lower court, alleged that in September, 1913, the plaintiff in error, Cornelius, was made defendant in a suit pending in the district court of Creek county, involving the title and oil and gas lease covering the allotment of Susie Crow, a deceased Creek Indian, whose allotment was located in the north end of the Cushing oil fields. This allotment embraced two tracts of 80 acres each. Cornelius held an oil and gas lease on the allotment that had been executed to him by Molly Tiger and Baby Cumsey, who claimed to be the sole heirs of the deceased allottee. The legality of this lease was one of the issues involved in that suit.

Smith in his petition alleged that he was a regularly admitted attorney at law practicing at Sapulpa, engaged in the active practice of his profession, and that after Cornelius was made a party to said suit he came and employed Smith to represent him thereto, and agreed orally to pay him a nominal fee in the event that the litigation, or other litigations involving the lease which might be brought, was lost, or in the event that the premises were condemned in the meantime for oil and gas mining purposes, and in the event that his interest in the premises was established, or if the matter was compromised, he was to pay Smith a liberal fee, based on the amount Cornelius should obtain thereby; that under said agreement of employment he appeared in said case as Cornelius' attorney, and filed an answer for him, and appeared for him, and looked after his interest in the litigation for a period extending over something like a year; that in September, 1914, Cornelius disposed of his lease on 80 acres of said land for the sum of $20,000; that later he disposed of his interest in the other 80 acres

for the sum of $37,500; that a reasonable fee for the services rendered in said litigation under the terms of said contract would be $10,000, for which amount judgment was prayed.

Cornelius answered, denying specifically that he entered into the contract as set out in the petition, but admitted that he employed Smith to file an answer for him, but alleged that he had other attorneys regularly employed to represent him, but that these attorneys were personally interested in this suit, and for that reason did not care to appear for him, but agreed to prepare the pleadings and advise as to his interests, but suggested that Smith be employed to appear in court for him; that his regular counsel prepared the answer, and he delivered it to Smith, and asked him how much he was going to charge to appear for him and represent him under the directions of his general counsel, and that Smith said he would only charge a small fee, and in no event to exceed $250; that with this understanding he delivered the answer to Smith and directed him to file it; that Smith rendered very little service in the case, and that $100 would be ample compensation for the services rendered, and tendered that amount in the court in satisfaction of his claim.

The case was tried to the court and a jury, and a verdict returned against Cornelius and in favor of Smith for $2,145. On the hearing of the motion for a new trial the court found the verdict to be excessive in the sum of $145, and required the plaintiff to remit that amount and on his doing so a new trial was denied, and the verdict approved for $2,000, and judgment entered for that sum. To review this judgment, Cornelius has appealed to this court.

It is contended (1) that the judgment for $2,000 is excessive, and is so excessive that it is apparent that the same was the result of passion and prejudice on the part of the jury, and therefore should be set aside. This proposition is argued at length in the brief. The character of the services rendered by Smith in the action are belittled, and it is contended that, viewed in any light, with calm deliberation, they could not possibly be found to be worth the amount of the judgment; that the trial court who saw the witnesses and heard them testify found that the verdict was excessive in the sum of $145, and that such finding necessarily involved the finding that the same was the result of prejudice and passion on the part of the jury, and that, if it was, the vice extended to the entire verdict, and could not be cured by a remittitur, but the ver-

dict should have been vacated and a new trial ordered. It is not clear on what ground the court found the verdict to be excessive, and just how he determined the amount that should be remitted. This court has adopted the rule relative to excessive verdicts that they should be vacated on this ground "only when it appears that the verdict is so excessive as per se to indicate passion or prejudice." St. Louis & S. F. Ry. Co. v. Hodge, 53 Okla. 427, 157 Pac. 60. In the instant case the employment was admitted. What were the terms of the contract of employment was the leading issue in the case. If the terms were as Smith contended, then the value of the services rendered was another issue to be determined by the jury. These were issues of fact that were submitted to the jury fully and fairly by the court in a series of instructions which were not excepted to by either party. The jury by its verdict found that the terms of the contract of employment were as alleged by Smith, and the verdict also fixed the reasonable value of the services rendered. There is nothing upon the face of the verdict or upon the record to justify the conclusion that the verdict was the result of passion or prejudice on the part of the jury. On the contrary, the evidence abundantly supported the verdict and judgment.

Again, it is argued that the court erred in the admission of certain evidence: (1) In admitting an order of revivor made in the case upon the death of Wallace Jack, one of the parties to the suit. It appears that this order was prepared by Smith, and was entered upon his request to the court, and that in doing this he was acting in the interest of his client, Cornelius. Although Smith did not appear for Wallace Jack, he being represented by another attorney in the case. This evidence was competent upon the issue as to the character of the service rendered by Smith, which was one of the material issues in the case. (2) It is complained that testimony was admitted showing the interest of McDougal & Lytle in the suit, and that they received a portion of the $20,000 paid to Cornelius for the lease on the land. This testimony was admitted for the purpose of showing how much Cornelius realized out of the lease, and for that purpose it was competent.

Again, it is complained that the court erred in admitting testimony that Mr. Ransom, another attorney, received $10,000 of the $37,500 paid Cornelius for the lease on the second 80 acres. This testimony, it seems, was competent for the same reason as the other testimony set out above.

Lastly, it is contended that the judgment is erroneous, and that a new trial should have been granted, for the reason that there was no consideration necessary to entitle the plaintiff to recover, on the basis of a contingent fee contract, for the reason that the nature of the services which he claims to have rendered in the case were minor acts, and required on the part of the counsel rendering them no skill or diligence or legal knowledge. In answer to this contention we are constrained to say that whatever skill or legal knowledge Smith may or may not have possessed, or whatever diligence he may or may not have exercised in this case, should be determined by the results obtained by the lawsuit. Measured by this standard, Cornelius' attorney must have been possessed of a fine degree of skill, and exercised considerable diligence, and displayed a high degree of legal knowledge in this litigation, since the evidence shows that Cornelius invested $100 in the lease, and as a result of a compromise and settlement of the action realized the sum of $47,500 in money. From this result we are forced to the conclusion that he had competent and skillful legal advice and was well served by his counsel in the litigation. Smith was his only attorney of record, and from the evidence we cannot say that he did not show skill, diligence, and legal knowledge of a high character.

On the whole record, we conclude that the judgment appealed from should be affirmed.

By the Court: It is so ordered.