# CHARLESTON.

## J. L. STAFFORD v. ALEX BISHOP.

### (No. 5195.)

Submitted March 24, 1925.           Decided March 31, 1925.

1. LIMITATION OF ACTIONS—*Statute Does Not Run as to Attorney's Services for Client Until Employment Ends.*

    When an attorney engages to perform certain services for a client during an indefinite period, the statute of limitations is inoperative thereon until his employment is terminated. (p. 630).

    (Attorney and Client, 6 C. J. § 337; Limitations of Actions, 26 Cyc. p. 1082.)

2. SAME—*Statute Runs in Relation to Special Service of Attorney When it Terminates.*

    If, during that period, the attorney is retained by the client for a special purpose not within the scope of his regular engagement, the statute begins to run in relation to such special service when it terminates. The statute is not suspended in regard thereto by reason of his continuous employment. (p. 632).

    (Limitations of Actions, 25 Cyc. p. 1082.)

3. ATTORNEY AND CLIENT—*Matters to be Considered in Determining Value of Attorney's Services, Stated.*

    In determining the value of an attorney's services upon a *quantum meruit*, a jury may take into consideration evidence as to the attorney's ability, skill, experience, diligence,

and standing in his profession, as well as the nature and extent of the services performed, the difficulties encountered, the responsibility assumed, the amount involved, the physical and mental labor expended, the results achieved, their benefit to the client, and the usual and customary charges for like services in the same vicinity. (p. 636).

(Attorney and Client, 6 C. J. §§ 331, 353.)

(NOTE:—Parenthetical references by Editors. C. J.—Cyc. Not part of syllabi.)

Error to Circuit Court, Mingo County.

Action by J. L. Stafford against Alex Bishop, executor under will of Allen Ferrell, deceased. Judgment for plaintiff, and defendant brings error.

*Judgment reversed; verdict set aside; new trial awarded.*

*Bronson & Straton,* for plaintiff in error.
*Charles E. Hogg,* for defendant in error.

HATCHER, JUDGE:

The plaintiff in this case is an·attorney-at-law, residing at Williamson, West Virginia. The defendant is executor under the will of Allen Ferrell, deceased. This will was probated April 17th, 1907. Clause 7 of the will is as follows:

"It is my desire and request that the disposition and division of my property be paid out and divided under the direction and supervision of my attorney, J. L. Stafford, and in accordance with the strict legal construction of this, my last will and testament; and that all deposits of money and investments that may be made by my hereinafter to be named executor shall be done under the direction of my said attorney, and not otherwise; which attorney shall be allowed as he may think a reasonable compensation for his services herein, and to be paid by my hereinafter to be named executor when so requested by my said attorney; as well as for services that he has heretofore rendered for which he has not been paid, to-wit, for all services rendered from the first day of January, 1907."

This is an action in assumpsit brought to the August Rules, 1923, of the circuit court of Mingo county. The plaintiff seeks hereby to recover for his services to the estate. The items of service set forth in the declaration are as follows:

"Services rendered in the probate of the Will of the said Allen Ferrell, on the 17th day of April, 1907 . . . . . . . . . .$    100.00

Services rendered in the case of Vicie Daniels, Administratrix, etc., against Alex Bishop, Executor, and others, in the Circuit Court of Appeals of West Virginia, which suit was instituted and prosecuted in the years 1915 and 1916. .    300.00

Services rendered in the case of J. L. Stafford, guardian for Wayne Ferrell vs. Wayne Ferrel and others, for the sale of certain real estate that belonged to the said Wayne Ferrell, in the Circuit Court of Mingo County, in the year 1916. . . .    200.00

Services rendered in adjusting the distribution of the estate of the said Allen Ferrell, upon the renunciation of the will of Allen Ferrell by Vesta Ferrell, his widow, on the 18th day of July, 1907, in which there was a proceeding instituted by the widow, Vesta Ferrell, renouncing the will of Allen Ferrell, which was finally decided on the 18th day of July 1907 . . . . . . . . . . . . . . . . . . . . . . .    200.00

Further services rendered in advising and directing the said Executor in the discharge of his official duties as such executor, which includes the investment of funds of the testator, settlement of the executor's accounts, as to rental of real estate of the testator, making repairs thereon, and in taking care of the estate under his trust as such executor, to-wit, the 17th day of April, 1907, to the present, at the rate of $250.00 per annum. . .    4,000.00

                                                    ──────────
                                                    $4,800.00"

Upon the trial of the case, a verdict of $4,800.00 was returned in favor of the plaintiff. The defendant prosecutes error here.

The testimony of the plaintiff is that after he and the defendant examined the will, the defendant remarked to him: "It was intended by the will from Allen Ferrell that you be associated with me, or that you assist me in looking after the estate, and therefore I employ you for the purpose."

The performance by the plaintiff, and the value of the services set forth in the first four items of his account, were proven as alleged. In support of the fifth item, in his account, to-wit, the charge of $250.00 per annum for sixteen years, he testified, in answer to questions by his attorney, which were quite frequently leading, that he advised with Mr. Bishop from time to time as to what was best to be done with the estate. His expressions in regard thereto were: "I talked with him on several occasions, and he talked with me on several occasions. . . . . . I was always ready to advise. . . . . I talked with Mr. Bishop about settlements. . . . . There was two settlements made, and after those two settlements were made, we discussed it. . . . . Two or three parties came to me and wanted to employ me against the executor, and I told them No, I couldn't do that. . . . . Of course, sometimes it would be that some time passed wouldn't say there was anything to do, but I stood in readiness all the time to do anything that was necessary."

The plaintiff admitted he had no contract for payment by the year. In regard thereto, he said: "I thought I was entitled to the amount I had charged." He also testified that he had been appointed guardian of Wayne Ferrell, the infant son of Allen Ferrell. He estimated the value of the estate at $50,000.00. The character of the estate does not appear from the evidence.

Several attorneys gave testimony, as experts, on the value of the services of the plaintiff to the estate. One of them said: "Assuming the estate is worth $50,000.00, I think the charge of looking after the estate generally, and looking

after especially the interest of this chap, Wayne Ferrell, I
think is certainly worth $250.00 a year.'' The testimony of
the second: ''Assuming that it was an estate of twenty-five
or fifty thousand dollars, I can hardly conceive of the legal
business of such an estate being carried on at a less expense
than $250.00 a year.'' A third testified that in view of the
size of the estate, the fact that .Mr. Stafford was bound to
render services for the estate, and was thereby prevented
from taking any fee against the estate, and in further con-
sideration of the responsibility of a lawyer in directing and
advising an executor, he was also of the opinion that a
charge of $150.00 a year was reasonable. The fourth attor-
ney testified that he would say: ''If Mr. Stafford was the
legal adviser of Mr. Bishop and advised him each year as
to the management and how to invest this estate and the
handling of the estate, I would say that $250.00 a year is
a reasonable amount.''

The defendant testified that there never was any contract
between him and the plaintiff as to the plaintiff's services.
He did not dispute the reasonableness of the fees included
in the first four items of the plaintiff's account. In re-
gard to the charge of $250.00 a year, he stated that he took
up matters relative to the estate only occasionally with Mr.
Stafford. According to his recollection, he had not con-
ferred with him in regard thereto since the sale of the
Thacker property. The evidence fixed this sale in the year
1916. The defendant also stated that he did not call on
Mr. Stafford for any service in investing the funds of the
property. He said: ''The most of it was invested in deeds
of trust, and I usually made the man who borrowed the
money furnish the proper papers without cost to the es-
tate.'' He further testified that he never called on the
plaintiff for very much advice outside of the matters men-
tioned in the first four items of the plaintiff's account; that
about ten or twelve years ago, he asked Mr. Stafford twice,
according to his recollection, for advice about investing some
of the money of the estate in bonds and securities. He had
plead the statute of limitations to all the items in the plain-
tiff's account, under the advice of his attorney.

The defendant alleges error in the instruction given by the court to the jury at the instance of the plaintiff, which is as follows:

> "The court instructs the jury that if they believe from the evidence in this case that the defendant, Alex Bishop, Executor of Allen Ferrell, deceased, secured the legal services and advice of J. L. Stafford, plaintiff, under the will of Allen Ferrell, and there was no fixed time as to when his services should cease, or when payment was to be made therefor, and said services were continuous, the statute of limitations does not begin to run until said Bishop refused to pay for such services."

The theory of the plaintiff is that all of his services to the estate were continuous, and consequently, the statute of limitations did not run against any of his claims until the services ceased, or until the defendant refused to pay therefor. The contention of the defendant is that the charges described in each of the first four items in the plaintiff's account were charges made for distinct and separate transactions, and that upon the termination of each separate service, the statute of limitations commenced to run in relation thereto. The defendant further contends that the annual charge made against the estate by the plaintiff for each year since 1907 was a separate charge, that the statute of limitations began to run against each annual charge at the end of the year for which made, and that the plaintiff was not entitled to recover for any services performed in any year prior to five years before the commencement of this suit.

The general law in regard to this matter is clearly stated in sections 120-121, Wood on Limitations, 4th Ed.:

> "Where there is a contract for continuous services and no time of payment is specified, the wages do not become due so that an action can be brought therefor, until the service is ended, and the statute only begins to run from that time.
>
> This rule, as to entire contracts for services, is well illustrated in the case of attorneys. . . . . ..

It must be understood, however, that this rule relates to an attorney's bills under a general retainer, so that his services are continuous, and has no application where he is specially employed, as to make a brief, or argue a cause, or file a motion, or perform any other special service that does not involve or contemplate any further connection with the case. In the latter instance his right of action is complete as soon as the service is performed. . . . Another matter must be remembered, and that is, that where there is no special agreement in relation thereto, if an attorney is employed in several causes, his right of action accrues with the entry of final judgment in each of them, and the statute begins to run from that time, and is not suspended by the circumstance that other actions for the same client in which he is employed are still pending.''

To the same effect, section 2661, Elliot on Contracts, Vol. III.:

''Thus, where no certain time is fixed for payment or the termination of the contract . . . . the contract, whether express or implied, should be held to be a continuous one and the statute inoperative until the services are ended.

''Where there is an isolated or special agency, one for a particular act or acts, one to collect a specific debt or debts, the statute begins from the act of collection in each particular case; but where the agency has currency, is continuous, is general, involving many acts, or a course of business involving many transactions, the statute begins from the termination of the agency.''

The learned counsel for the defendant in error calls particular attention to section 164, p. 797, of Ruling Case Law which he states contains the principle ''governing the question now before the court.'' His citation is in line with the authorities herein quoted. It is as follows:

''Where a claim for work, labor, or services performed represents distinct contracts for the items specified it would seem that the statute would com-

mence to run as to those items represented by each
contract.   But where the matters specified in the
claim are the outgrowth of an entire contract for
continuous labor or services, the demand will be con-
sidered as an entire one and the statute will not at-
tach until the completion of the contract.''

The plaintiff, in his testimony, as well as his counsel in his
brief assume that clause 7 of the will gave the plaintiff con-
tinuous employment. We think this assumption is correct.   The
continuity of his employment, however, applied only to serv-
ices specifically mentioned in clause 7, and to such other
*assistance in the management of the estate* as he may have
rendered by reason of his alleged employment by the de-
fendant.   The services imposed on the plaintiff by the will,
as therein stated, are:

"It is my desire and request that the disposition
and division of my property be paid out and di-
vided under the direction and supervision of my
attorney, J. L. Stafford; . . . . . and that all de-
posits of money and investments that may be
made by my hereinafter to be named executor shall
be done under the direction of my said attorney,
and·not otherwise.''

In other words, the plaintiff was to do four specific things
under this clause.   He was to supervise the *paying out and di-
vision of money,* and to direct *the deposits and investments of
money.*   This clause neither expressed nor implied a desire or
request that the plaintiff should probate the will, or represent
the estate in such court litigation as might arise in regard
thereto.   The *assistance* requested by defendant did not im-
ply that the plaintiff should do these things.   The services de-
scribed in the first three items of the plaintiff's account were
in no way connected with the payment, the division, the de-
posit, or the investment of the estate's funds.   They were
not rendered in assisting the defendant generally in his duties
as executor ''in looking after the estate.''   These services were
clearly the result of a special employment, express or implied,
in each case,.   They were separate and distinct from the

services contemplated in the will, and from the ordinary services involved in assisting the executor to manage the estate. They were also treated by the plaintiff himself. He regarded them as outside the scope of his continuous employment. He made separate and distinct charges therefor. The three special engagements terminated many years ago. Under the very authorities cited by plaintiff's counsel, the statute commenced to run as to each of these items as soon as the service was completed. Plaintiff's testimony shows that his connection with the last of those cases terminated in the year 1916. More than five years had elapsed as to each of these items before the institution of this action. Recovery on each was, at the time, accordingly barred.

The case of *Walker* v. *Goodrich,* 16 Ill. 341; *Eliot* v. *Lawton,* 83 Am. Dec. 683; *Hancock* v. *Pio-Pico,* 47 Cal. 161; *Mygott* v. *Wilcox,* 45 N. J. 306; *Foster* v. *Jack,* 4 Watts, (Pa.) 344, and *Schaffner* v. *Schaffner's Estate,* 98 Kan. 167, cited in plaintiff's brief have reference respectively, to a *single* case, or suit, or action, or undertaking. They do not support the contention that the statute should not run against the special services herein, until the termination of the continuous · employment.

We are of opinion, however, that the services of the plaintiff in supervising the payment and division of money, and directing the deposits and investments of money were intended under the will to continue until the termination of the executorship. His general employment to *assist the defendant,* as claimed by him, was also a continuous one. The service described in the fourth item of his account seems to have been a service contemplated by the testator in clause 7. The services, under his continuous employment, were not barred by the statute of limitations at the commencement of this suit.

> "Where an agency or trusteeship has currency, or involves numerous acts or a course of business involving many transactions, the statute of limitations begins to run, not from the date of each transaction, but from the termination of such agency."

*Koen* v. *Koen,* 86 W. Va. 503, 103 S. E. 322.

"As a general rule, when there is an undertaking or agency which requires a continuation of services, the statute of limitations does not begin to run until the termination of the undertaking or agency. The facts in this case do not take it from under the influence of the general rule. The agency was continuous for 17 years; the transactions were numerous, involving a long and complicated account, the details of which were known only to the agent, and the principal was a non-resident and compelled to rely upon the agent for a faithful discharge of his trust."

*Wilson* v. *Miller*, 104 Va. 446, 51 S. E. 837.

"Where there is an undertaking which requires a continuation of services, limitations run only from the time the services can be completed."

*Washington, B. & A. Electric R. Co.* v. *Moss*, 100 A. 86, 130. Md. 198.

Plaintiff's instruction was therefore misleading in so far as it grouped all of plaintiff's services together as continuous, and failed to apply the statute of limitations to the first three items of his account.

The defendant also contends that the evidence did not warrant the jury in finding for the plaintiff the amount claimed in the fifth item of his account. There was no exception taken to either the testimony of the plaintiff, or that of his witnesses on the charge of $250.00 a year. No witness for the defense stated that this charge was unreasonable. The plaintiff's brief assumes that the evidence in regard to this charge is conclusive. We do not find this to be the law.

"Testimony as to the reasonableness of an attorney's charge for legal services is not testimony as to a fact, but is in the nature of opinion evidence, and is not conclusive, especially where the witness is interested."

*Brooklyn Heights R. Co.* v. *Brooklyn City R. Co.*, 109 N. Y. S. 31.

Accord:
*Jones* v. *Fitzpatrick* (S. C.) 24 S. E. 1030.
*Cosgrove* v. *Leonard,* 134 Mo. 419.
*Head* v. *Hargrave,* 105 U. S. 45.
*Lilly* v. *Robinson M. Co.,* 106 Ark. 571.
See Note to 20 Ann. Cases, p. 56.

The evidence of the plaintiff, as well as that of his witnesses, was based on the theory that because he was *standing by continuously,* and was always ready to advise the executor as to any business relating to the estate, he therefore had the right to make an annual, or retaining charge. We do not think this theory is warranted under clause 7 of the will, or under plaintiff's alleged employment by the defendant. That clause specifically provides that the plaintiff shall be allowed a reasonable compensation "for his services herein." But the services *therein* were specific services. He was not therein directed to represent the estate *generally,* or *by the year.* He was not therein requested to *stand by and be ready at all times* to advise the executor on every matter affecting the estate. The only duties specifically imposed upon him by the will were, as hereinbefore stated, the supervision of the payment and division of money, and the direction of the deposit and investment of money.

As an attorney learned in the law, the plaintiff should have recognized the limited services required of him, whether under the will, or under his alleged employment by the defendant. It was optional with him whether he would serve the estate and its executor in such a limited capacity. He could have declined to so serve and accepted employment against it. Having elected to serve in the manner aforesaid, he must curtail his charges to services actually performed in that limited capacity. He cannot collect compensation for mere willingness to serve. He cannot exact a retainer for merely *standing by* during the many years in which, according to the defendant, he was called upon for neither advice nor service.

By reference to the testimony of plaintiff's witnesses, it will be seen that each attorney based his opinion of the reasonableness of plaintiff's charges on some special standard of the witness or upon an assumption of facts not warranted by the

evidence. This testimony was clearly improper. An opinion in such case must be as to the value of the particular services rendered and not as to the general value of such services under the personal standard of the witness. See 6 C. J. 762; *Southgate* v. *Ry. Co.,* 61 Mo. 89; *Schlessinger* v. *Dunne,* 73 N. Y. S. 1014; *Allis* v. *Day,* 14 Minn., 516, (see opinion of Court; *Louisville etc. R. R. Co.* v. *Wallace,* (Ill.) 11 L. R. A. 787; *Maneaty et al.* v. *Steele,* 112 Ill. 19.

The plaintiff should be allowed a reasonable compensation for his services to the estate and the executor during the sixteen years preceding this action, in so far as he supervised the paying out and division of money, directed the deposit of money and investments, and *assisted* the defendant in his other duties as executor. His compensation should be limited strictly to services in these respects.

The evidence in the case does not conform to this view. It does not show the labor, time, and trouble of the plaintiff in the performance of these services. It does not show the amount of money distributed or divided under his supervision, or deposited or invested under his direction. It does not show the difficulties he encountered, the responsibility he assumed, the results he achieved, or their benefit to the estate. These, as well as other matters, such as the plaintiff's ability, skill, experience, diligence and standing in his profession and the usual and customary charges for like services in the same vicinity, may be considered in determining the value of his services. Thornton on Attorneys-at-Law, section 533; 6 C. J. sec. 331, pages 748, etc.; 2 R. C. L. sec. 145, page 1059; *Clark* v. *Ellsworth,* (Iowa) 73 N. W. 1023.

The verdict of the jury is without competent evidence to support it.

> "An attorney cannot recover for professional services without proof of their value."
>
> *Fry* v. *Lofton,* 45 Ga. 171.

The judgment of the lower court will therefore be reversed, the verdict set aside, and a new trial awarded.

*Judgment reversed; verdict set aside; new trial awarded.*