### BEHR *v.* BAKER.

1. ATTORNEY AND CLIENT—COMPENSATION OF ATTORNEY SHOULD BE BASED ON SKILL, EXPERIENCE, ETC.—EVIDENCE.

   In determining the value of attorneys' services, their skill, experience, and professional standing should be considered, and importance and results of particular litigation, either direct or consequential, was relevant, and expert testimony was admissible.

2. SAME—COMPENSATION NOT LIMITED TO STATEMENT.

   Statement sent by attorneys to client for certain sum for retainer and on account of services rendered and to be rendered cannot be held to limit their compensation.

3. SAME—QUESTION FOR JURY.

   Whether attorneys agreed, as claimed by clients and denied by attorneys, that amount named in statement should be limit of their compensation for all services, *held*, question for jury.

4. SAME—COMPENSATION—EXCESSIVE VERDICT—DAMAGES.

   Verdict of $37,500 for attorneys' services would be grossly excessive if settlement of pending lawsuit and payment of $750,000 to their clients was induced by patent issued to them rather than by pending litigation.

As to expert testimony of value of attorneys' services, see annotation in 11 L. R. A. 787.

5. SAME—EVIDENCE.

Where, in action for attorneys' fees, issue was as to what in-
duced settlement of lawsuit in which plaintiffs represented
defendants, exclusion of testimony by secretary of company
settling lawsuit and paying large sum of money as to what
was controlling reason therefor, was error.

6. EVIDENCE—TRIAL.

Where testimony offered by defendants met issue presented by
plaintiffs, it was competent and relevant; that there was no
way for plaintiffs to meet it did not render it inadmissible.

7. ATTORNEY AND CLIENT—COMPENSATION—EVIDENCE.

Where, in action for attorneys' fees, plaintiffs claimed that law-
suit in which they represented defendants was controlling
factor in bringing about settlement and payment to defendants
of large sum of money, and defendants claimed that patent is-
sued to them was controlling factor, it was error to reject testi-
mony of expert patent attorney, offered by defendants, that he
had advised other party to lawsuit in respect to validity of
said patent.

8. SAME—HYPOTHETICAL QUESTION—ASSUMPTION OF FACTS.

Where hypothetical question assumed that lawsuit was con-
trolling factor in bringing about settlement and payment of
large sum of money to clients, attorneys giving expert tes-
timony relative to compensation earned by attorneys for said
clients had to assume that said lawsuit was controlling factor
in bringing about said settlement.

9. SAME—BURDEN OF PROOF.

Attorneys claiming that settlement of litigation and payment to
their clients of large sum of money was brought about by
lawsuit in which they represented said clients had burden of
proving said claim.

10. SAME—FACTORS CONSIDERED IN FIXING COMPENSATION.

Compensation to attorneys could not be fixed upon consideration
of payment to their clients of large sum of money in settle-
ment of lawsuit beyond results factored by said suit.

Appeal from Wayne; Campbell (Allan), J. Sub-
mitted June 10, 1931. (Docket No. 67, Calendar
No. 35,662.) Decided October 22, 1931.

Assumpsit by Fred A. Behr and Frank W. Coolidge, copartners doing business as Behr & Coolidge, against Erle K. Baker and Universal Rim Company, an Illinois corporation, for legal services. Verdict and judgment for plaintiffs. Defendants appeal. Reversed, and new trial granted. For decision on retaxation of costs in this case see 257 Mich. 487.

*Oxtoby, Robison & Hull* (*Leo I. Franklin,* of counsel), for plaintiffs.

*Milburn & Semmes* (*Edmund C. Shields,* of counsel), for defendants.

WIEST, J. This is a suit by attorneys to recover compensation for legal services rendered defendants.

In the circuit court the issues relative to the nature and extent of the services rendered were tried to a jury, and, as usual, the proper compensation was a subject of testimony by other attorneys. In determining the value of the services rendered, the skill, experience, and professional standing of the attorneys was proper (*Bayou Meto Drainage District* v. *Chapline,* 143 Ark. 446 [220 S. W. 807]; *Stafford* v. *Bishop,* 98 W. Va. 625 [127 S. E. 501]), the importance and results of particular litigation, either direct or consequential, was relevant (*Pons' Succession,* 142 La. 721 [77 South. 515, Ann. Cas. 1918 D, 939]; *Cornelius* v. *Smith,* 73 Okla. 217 [175 Pac. 754, 9 A. L. R. 233]), and expert testimony was admissible.

Plaintiffs are attorneys in the city of Detroit. Litigation, instituted in behalf of defendants herein, involving a claim of $2,000,000 (more particularly stated later), was pending in the Federal district court at Detroit, and plaintiffs herein were employed by plaintiffs in that suit to render professional services in concert with attorneys in Chicago.

Such services, covering a period of 11 months, were rendered and involved pleadings, court motions, conferences, advice, and preparation for trial. On the eve of trial, a settlement of that case, other cases, and rights to and under patents was reached, without participation by plaintiffs, and defendants herein received $750,000. The litigation in which plaintiffs were employed involved intricate questions of law and fact and bid fair to be prolonged. Eminent counsel represented defendants therein. Plaintiffs herein had able associate counsel in that litigation, but, outside of special assistance in the law and mechanics of patents, they had the burden of preparing for trial. For their professional services plaintiffs asked $37,500, less $1,000 paid, and had judgment for $36,500.

A more particular statement of the situation may be helpful. In 1926, the Universal Rim Company filed a bill in the Federal court at Detroit against the General Motors Corporation and Jaxon Steel Products Division, to have specific performance of a patent license contract and an accounting of royalties, claimed to be due thereunder. This involved many patents. The district court dismissed the bill for want of equity. The circuit court of appeals, in May, 1929, permitted transfer of the case and prosecution at law. At once plaintiffs were employed to act with counsel in Chicago to reframe the pleading to conform to a declaration at law and to act as local counsel. Recovery sought was the sum of $2,000,000. At the time plaintiffs were employed in the mentioned case there were two other cases pending in the Federal court at Detroit, one of which was brought by the Universal Rim Company against the Motor Wheel Corporation, in equity. That case was somewhat similar to the suit in which plaintiffs were employed. The other was an action

at law by the Baker Wheel & Rim Company against the Motor Wheel Corporation, to recover damages for infringement of patents upon certain wheels. Plaintiffs were not employed to act in either of these suits, and took no action with reference to the same, but claim that, inasmuch as rights under three patents were involved in one such case as well, they were requested by defendants herein to examine the files in order to ascertain the bearing thereof, if any, upon the suit in which plaintiffs were employed.

Early in their employment plaintiffs sent to the Universal Rim Company a statement reading:

"To retainer, and on account of services rendered and to be rendered in the matter of Universal Rim Company v. General Motors Corporation, *et al.* and/or v. Motor Wheel Corporation. 1,500."

This cannot be held to determine the limit of plaintiffs' compensation, for, on its face, it purported to be no more than a request for $1,500, on account of services, past and prospective. Whether plaintiffs agreed, as claimed by defendants and denied by plaintiffs, that such should be the limit of their compensation for all services was a question of fact, and properly left to the jury for consideration.

Defendants insist that the compensation claimed by plaintiffs, and awarded by the jury, is grossly excessive.

The theory upon which plaintiffs recovered was that the lawsuit in which they were employed was the controlling factor in bringing about the settlement and receipt by defendants of $750,000.

Defendants claimed at the trial that the payment of $750,000 was not occasioned by the pending litigation, but by reason of a patent granted defendant Baker in June, 1929, and, to substantiate such claim,

offered testimony by persons who represented the payors to show the reason impelling the settlement. If the patent was the impelling cause of the payment of the $750,000, and the pending suit was but an incident thereto, then the verdict is grossly excessive.

Mr. Carlton, secretary of the Motor Wheel Corporation, and who negotiated the settlement, testified that the corporation was not particularly disturbed by the suit or by the suits, but vitally interested in the interchangeable three-wheel patent, and after the issuance of that patent to Mr. Baker in June, 1929, negotiations for its acquisition and a settlement of all differences between Mr. Baker, the Universal Rim Company, the Baker Wheel & Rim Company, the Motor Wheel Corporation, and the General Motors Corporation, was taken up.

In April, 1930:

"An agreement was reached between Mr. Baker acting for Universal Rim Company and Baker Wheel & Rim Company on the one hand, and Motor Wheel Corporation on the other hand. Separate agreements were entered into with Universal Rim Company and Baker Wheel & Rim Company. By these agreements, Motor Wheel Corporation paid Universal Rim Company $150,000. In consideration of this sum, Universal Rim Company assigned to Motor Wheel Corporation all its patents pertaining to demountable rims, felloe bands, etc. (including all of the patents involved in the suit of Universal Rim Company against General Motors Corporation); Universal Rim Company settled its lawsuit against Motor Wheel Corporation; it assigned to Motor Wheel Corporation all royalties theretofore accrued or thereafter accruing to it, including in this assignment all claims of royalties against General Motors Corporation and Jaxon Steel Products Division; and it agreed that it would assign for a period of 20 years in the future all patents relating to the

field of demountable rims, etc., and all patents in such field which should be obtained for a period of 20 years in the future by Mr. Baker or any of the officers of Universal Rim Company.

"Motor Wheel Corporation paid Baker Wheel & Rim Company $600,000. In consideration of this sum paid to it, Baker Wheel & Rim Company assigned to Motor Wheel Corporation all of the patents owned by it including the interchangeable three-wheel patent; it assigned all royalties theretofore accrued or thereafter accruing under any and all of said patents; it settled the lawsuit of Baker Wheel & Rim Company against Motor Wheel Corporation then pending in the district court for infringement; and it agreed to assign all patents secured or controlled by it, Mr. Baker or any of its officers, for a period of 20 years in the future, relating to demountable wheels."

This is taken from defendants' brief, and we think it a fair statement.

The court refused to permit Mr. Carlton to answer the following question:

"What, Mr. Carlton, was the controlling reason, from your standpoint, for the execution of this agreement with Mr. Baker?"

This ruling excluded vital testimony. Mr. Carlton was aware of what moved his company to make settlement, and the testimony sought was in direct refutation of plaintiffs' contention that the lawsuit was the moving power, and the answer should have been permitted. The trial judge, while noting that the testimony would be helpful, excluded it because there was no way for plaintiffs to meet it. That is no test. It met the issue presented by plaintiffs, and that made it competent and relevant.

For some years the Motor Wheel Corporation had extensively advertised an interchangeable three-wheel, demountable hub, which permitted the mount-

ing upon a single hub, either a wood wheel, a wire wheel, or a disc wheel, and had applied for a patent. Mr. Baker also applied for a patent upon the same thing. In June, 1929, the patent issued to Mr. Baker. Mr. Greist, patent counsel for the Motor Wheel Corporation, entertained the view that the patent dominated the product. Negotiations for settlement soon followed.

Mr. Greist of Chicago, skilled in the law of patents, and who was one of the attorneys for the Motor Wheel Corporation in the suit in the Federal court, was called as a witness by defendants herein, and gave testimony relative to the effect that the patent of June, 1929, dominated the wheel which the Motor Wheel Corporation was manufacturing. He was asked:

"Did you advise the Motor Wheel Corporation with respect to the validity of this patent issued to the Baker Wheel & Rim Company?"

This referred to the Baker patent of June, 1929, and, under assignment, issued to the Baker Wheel & Rim Company. The court sustained an objection to the question, struck it from the record, and reprimanded counsel for stating the following reason for asking the question:

"For this reason, if the court please, we must show by Mr. Greist, the patent counsel for the Motor Wheel Corporation, that his advice upon the validity of this patent was the thing which opened up the negotiations on the part of the Motor Wheel Corporation, leading to the consummation of the purchase."

The court was in error. Mr. Greist participated in the settlement, plaintiffs did not, and, if his advice about the validity of the patent, instead of the pending litigation, induced payment of the $750,000, it was proper and vital testimony.

Attorneys who gave expert testimony relative to compensation earned by plaintiffs had to assume, under the hypothetical question, that the suit in the Federal court was the controlling factor in bringing the settlement. Mr. Crowley, an expert, so fixed the compensation at $50,000, and when asked:

"Suppose, Mr. Crowley, the settlement was $750,000 as assumed in the question, but that you do not consider that the efforts of Mr. Coolidge and Mr. Behr did produce that settlement, would your answer still be the same?"

Mr. Crowley answered:

"No, no. If I thought that their efforts had not produced or had not been the controlling factor in producing it, then I would not have said $50,000."

Plaintiffs made the reason for the settlement an issue, and in order to have the jury consider the receipt of the $750,000 by defendants, had the burden of showing that the suit in which they represented defendants was the impelling factor in bringing that sum to defendants. The excluded questions did not relate to the motive of any party to the suit at bar but called for testimony directly bearing upon the issue of fact presented by plaintiffs. The rulings constituted reversible error.

In no event can compensation to plaintiffs be fixed upon consideration of the $750,000, or any part thereof, beyond results factored by the suit in which they were engaged. This testimony should have been admitted and its bearing upon plaintiffs' claim should have been submitted to the jury.

The judgment is reversed, and a new trial granted, with costs, to defendants.

BUTZEL, C. J., and CLARK, McDONALD, POTTER, SHARPE, NORTH, and FEAD, JJ., concurred.