## McGRAW v. TOWNSHIP OF LAKE.

1. APPEAL AND ERROR—CLAIMS ABANDONED.
   Claim of illegality of meeting at which contract sued upon was authorized, not discussed in appellant's brief, is presumed to have been abandoned.

2. CONTRACTS—ATTORNEY AND CLIENT.
   Agreement for legal services between two attorneys and township board *held*, severable, where it provided *each* was to receive a retainer fee and *each* was to be paid reasonable compensation for services.

3. ACTION—CONTRACTS—ATTORNEY AND CLIENT.
   Action on contract for attorney's services for successful prosecution of appeal is not prematurely brought where language of agreement providing that compensation was governed by "taking into consideration the results obtained" was controlled by preceding phrase "reversal or modification of said decree" of circuit court in drain proceedings, although at time action on contract was started there was an action pending in the Federal court brought by holders of drain bonds.

4. ATTORNEY AND CLIENT—ATTORNEY'S FEE.
   Judgment for $10,000 for attorney's services in appeal of case *held*, not excessive where from 75 to 100 full days were spent, question involved was new and difficult and required much skill in handling of case, majority of witnesses advanced higher figures as customary charges for similar services, amount involved was $2,900,000, saving to client was a large part of $139,000 assessment and, indirectly, other large sums, and amount of compensation was contingent on outcome of appeal.

5. SAME—APPEAL AND ERROR—EVIDENCE.
   Supreme Court, in exercising its supervisory powers over judgments for attorneys' fees, does not disturb them as to amount unless they are not reasonably within the range of the testimony.

Appeal from Macomb; Brennan (Vincent M.), J., presiding. Submitted January 18, 1934. (Docket

No. 138, Calendar No. 37,667.) Decided March 6, 1934.

Assumpsit by Frederick McGraw against Township of Lake, Macomb County, for legal services. Judgment for plaintiff. Defendant appeals. Affirmed.

*Christian F. Matthews* (*Frederick McGraw,* of counsel), for plaintiff.

*Arnold F. Zelzenik,* for defendant.

BUSHNELL, J. Defendant appeals from a judgment entered in the sum of $10,000 by the circuit court after a trial without a jury. Plaintiff, an attorney-at-law, declared on an agreement for legal services performed by him for defendant in the appeal of *Township of Lake* v. *Millar,* 257 Mich. 135, a county drain case. It is his claim that it was agreed that a retainer of $300 was to be payment in full unless he succeeded in obtaining a reversal or modification of the circuit court decree, in which event he was to receive "reasonable compensation." A bill for professional services in the sum of $17,500 was submitted. The defendant admitted the existence of the relation of attorney and client and the satisfactory performance of the services, but denied that the agreement was as stated and challenged the reasonableness of the claim. On appeal defendant contends that (1) no legal contract was made; (2) the contract was joint and not severable; (3) the action was prematurely brought; and (4) the judgment is excessive.

A complete statement of the facts is unnecessary. We note, however, that the plaintiff claims that the services rendered extended from December 29, 1930,

to March 15, 1932, and that the record in the appeal of *Township of Lake* v. *Millar, supra,* was approximately 500 pages long and was prepared from a transcript of some 2,000 pages. The total assessments covering the Nine Mile Halfway drain project involved in the litigation were $2,914,285. The direct liability of the township for its share of the cost of this drain was $139,774.76. The drain tax levied against property in the Lake township special assessment district totaled $334,893.16. These figures include both principal and interest and cover assessments for the years 1926 to 1940, inclusive. The assessments for the years 1926 to 1931, inclusive, had already been levied and some of the instalments paid at the time of trial. It seems, then, that there was a direct saving to the township of at least the sum of $139,774.76, less the amounts already paid. In addition, the taxpayers in the district, who are not parties to this suit, were benefited by being relieved from liability for the unpaid balance of the $334,893.16 special assessment.

Plaintiff also claims that the results obtained by him effected an indirect saving to the township of $135,643.58 in assessments for the Martin drain, not involved in this suit, as well as relieving the property owners of a $253,861.24 special assessment. Deductions must be made, of course, for the instalments paid between 1927 and 1931.

Defendant contends that plaintiff was one of two lawyers who received a total of $9,000 for the trial in the circuit, and that the $300 mentioned as a retainer for each was to be the sole compensation for their services on appeal. Plaintiff, however, was later paid $900 for appearing in opposition to a petition for intervention and motion for rehearing.

Five members of the bar were called by plaintiff and propounded the usual hypothetical questions as to the value of his services. Some of them had handled this type of litigation and all seemed well acquainted with the nature of the services. Their testimony as to what constituted a reasonable fee ranged from $17,500 to $20,000. Defendant called two such witnesses who testified that the proper amount should be from $2,000 to $2,500.

Appellant in its notice of appeal raises the question of the legality of the meeting of the township board at which plaintiff's services were authorized, and in the brief the question is thus stated:

"Under the facts in this case did a legal contract exist between plaintiff and defendant?"

No argument is presented in the brief in support of the claim of illegality, nor is the question discussed. It is, therefore, presumed to have been abandoned and we do not pass upon it. *Szydelko* v. *Smith's Estate,* 259 Mich. 519.

The language of the agreement, as expressed by the amended minutes of the meeting, is clearly indicative of the correctness of plaintiff's contention that his rights and those of Mr. Yoe, the other attorney, are severable. *Larkin* v. *Butterfield,* 29 Mich. 254; *Widner* v. *Western Union Telegraph Co.,* 47 Mich. 612. The agreement provided that each was to receive a retainer of $300. In addition, it was provided that if the decree of the circuit court was modified or reversed, "each of said attorneys shall be paid and allowed reasonable compensation for their services, taking into consideration the results obtained." The agreement was treated as severable by all the parties and so regarded by the trial court. *Wilmarth* v. *Hartman,* 238 Mich. 20.

Appellant claims the action was prematurely brought and in support argues that no positive beneficial results were obtained for the defendant. The argument and the record refer to a bondholders' action pending in the Federal court. Plaintiff's duty to defendant was discharged when he performed his services in connection with the appeal in this court. The retainer was specific and contemplated the performance of certain definite acts. Plaintiff's rights are not affected by the action of the bondholders unless the phrase, "taking into consideration the results obtained," supports defendant's contention. It is elementary that we must give to this language its usual and ordinary meaning. The clause, of course, refers to and is controlled by the words preceding, viz., "reversal or modification of said decree." The decree below was reversed here and that was the result contemplated. The phrase, "taking into consideration the results obtained," had no connection, nor do they have now, with anything other than the action contemplated in the agreement of retainer. Defendant's contention is wholly without merit.

We now consider the important question in the case. In the light of the results obtained, was the fee of $10,000, as fixed by the judgment of the trial court, more than a reasonable compensation to plaintiff for his services in obtaining a reversal of the circuit court decree? The legal yardstick in such matters has been variously described. In the case of *Frink* v. *McComb*, 60 Fed. 486, we read:

"There is no standard by which the compensation of counsel can be properly and definitely determined as to amount. The question, when presented at this time, must be decided upon considerations as vague and indefinite as when it was said in the Mirror

(chapter 2, § 5) that 'four things are to be regarded: (1) The greatness of the cause; (2) the pains of the serjeant; (3) his worth, as his learning, eloquence and gift; (4) the usage of the court.' "

The profession has stated the rule in the canons of professional ethics drafted and published by the American Bar Association (canon No. 12):

"In fixing fees, lawyers should avoid charges which overestimate their advice and services, as well as those which undervalue them. A client's ability to pay cannot justify a charge in excess of the value of the service, though his poverty may require a less charge, or even none at all. The reasonable requests of brother lawyers, and of their widows and orphans without ample means, should receive special and kindly consideration.

"In determining the amount of the fee, it is proper to consider: (1) the time and labor required, the novelty and difficulty of the questions involved and the skill requisite properly to conduct the cause; (2) whether the acceptance of employment in the particular case will preclude the lawyer's appearance for others in cases likely to arise out of the transaction, and in which there is a reasonable expectation that otherwise he would be employed, or will involve the loss of other business while employed in the particular case or antagonisms with other clients; (3) the customary charges of the bar for similar services; (4) the amount involved in the controversy and the benefits resulting to the client from the services; (5) the contingency or the certainty of the compensation; and (6) the character of the employment, whether casual or for an established and constant client. No one of these considerations in itself is controlling. They are mere guides in ascertaining the real value of the service.

"In fixing fees it should never be forgotten that the profession is a branch of the administration of justice and not a mere money-getting trade."

Chief Justice NELSON SHARPE restated the rule in *Fry* v. *Montague,* 242 Mich. 391, and said:

"We should, of course, consider the time spent, the amount involved, the character of the service rendered, the skill and experience called for in the performance of the work, and the results achieved."

Justice WIEST, speaking for the court in *Behr* v. *Baker,* 255 Mich. 607, collected some of the cases defining like standards, stating:

"In determining the value of the services rendered, the skill, experience and professional standing of the attorneys was proper; * * * the importance and results of particular litigation either direct or consequential, was relevant, * * * and expert testimony was admissible."

In the matter under consideration, we have an additional element which is noted in the canon quoted, viz., "the contingency or the certainty of the compensation." The testimony indicated the necessity for such an agreement. It was made by the duly-elected township officers. They had, from their viewpoint, unsuccessfully concluded a serious piece of litigation, the importance of which can be surmised from the fees paid counsel. The plaintiff, Mr. McGraw, received $5,500, and Mr. Yoe was paid $3,500 for the preparation and 20 days spent in the trial of the case in the circuit court. Defendant was confronted with further expense if it desired to appeal. It was but natural that the board should decline to add to the burden of the taxpayers of the township unless they received some material benefit. Consequently, it was agreed that plaintiff should receive $300 in any event and more only if the decree were modified or reversed.

Canon No. 12 of the American Bar Association was adopted in 1908 and is based on the best tradi-

tions of the profession in its dealings with the public. It has been generally accepted for a quarter of a century. We, therefore, prefer to test the judgment in this case by its provisions.

(1) The testimony shows that plaintiff rendered services consuming between 75 and 100 full days over a period from December 29, 1930, to March 23, 1932. The question involved was relatively new and difficult and consequently required much skill on the part of the advocate to present the issues to this court properly. No complaint is made as to his skill or ability.

(2) There is no testimony as to whether the acceptance of the retainer precluded plaintiff's appearance for others in cases arising out of the same transaction, in which there was a reasonable expectation that he otherwise would have been employed; nor is there any showing that the retainer involved or was at the time likely to involve the loss of other business. This element does not enter into our consideration of the merits of this case.

(3) The customary charges of the bar for similar services were the matter of testimony by generally accepted leaders of the bar, the majority of whom advanced figures higher than the amount of the judgment.

(4) There was involved in the controversy $2,900,000, it being the amount of the drain assessment levied, and the benefit resulting to the client from the services rendered was a saving of $139,000 over a period of 15 years, less the amount of several instalments paid in part. A large indirect saving was also effected.

(5) The extent of plaintiff's compensation depended upon the result of the appeal. If the decree of the lower court had been affirmed, plaintiff would

have had to be content with his $300, which no one claims was adequate compensation. Plaintiff took his chances on his judgment as to whether the decree was erroneous or not and on his ability to convince the appellate court of the soundness of his client's position.

(6) In view of the nature of the agreement between the parties, and there being nothing in the record to indicate whether the services were performed for a casual or an established and constant client, it is unnecessary to consider the character of the employment.

We have always exercised supervisory powers over orders and judgments for attorneys' fees. *Turnbull* v. *Richardson,* 69 Mich. 400; *Kelley* v. *Richardson,* 69 Mich. 430; *Sleator* v. *Richardson,* 69 Mich. 478; *Fry* v. *Montague, supra; Fannon* v. *LeBeau,* 245 Mich. 162; *Behr* v. *Baker, supra.* Nevertheless, we do not disturb the findings of the trial court regarding the amount of the damages unless we conclude that the verdict is not reasonably within the range of the testimony. *Kinsler* v. *Simpson,* 257 Mich. 7.

We have again examined the records and briefs in the case (*Township of Lake* v. *Millar, supra*) out of which this action arose, so that we are familiar with the nature of the services performed by plaintiff.

The judgment was within the range of the testimony, it is not excessive and it is affirmed, with costs to appellee.

NELSON SHARPE, C. J., and POTTER, NORTH, FEAD, WIEST, BUTZEL, and EDWARD M. SHARPE, JJ., concurred.