BAKER *v.* HALL-DODDS CO.

1. ATTORNEY AND CLIENT—ELEMENTS CONSIDERED IN DETERMINING CHARGES FOR SERVICES.

In determining amount of proper charges for legal services when no agreement is made in advance or during the progress of the case, the amount of time consumed and amount involved are but two of many factors which must be taken into consideration.

2. SAME—DETERMINATION OF AMOUNT OF CHARGES—QUESTION FOR TRIER OF FACTS—WEIGHT OF EVIDENCE.

Since determination of proper amount an attorney should charge for legal services rendered is largely a question to be determined by the trier of the facts, its determination will not be disturbed unless against the weight of the evidence.

3. SAME—EXPERT TESTIMONY AS TO VALUE OF SERVICES.

In action by an out-of-State attorney against domestic corporation for additional compensation for services rendered on its behalf in a city in such other State, testimony of defendant's local attorney as to fees, as limited to proper charge for services in cities of size comparable with that of city where services were rendered, *held*, not improper although perhaps weaker than testimony of attorneys directly from particular city.

4. SAME—VALUE OF SERVICES A MATTER OF OPINION.

The value of extensive legal services cannot be stated as a fact but only as an opinion.

5. SAME—VALUE OF SERVICES—EXPERT AND LAY KNOWLEDGE.

Trier of facts in action to recover additional compensation for services rendered as an attorney is not limited to the opinion of professional men although great weight should always be given to the opinions of those familiar with the subject.

6. SAME—OPINION OF TRIAL JUDGE AS A LAWYER AS TO VALUE OF SERVICES RENDERED.

In action to recover additional compensation for legal services rendered, tried by trial judge without a jury, weight is accorded to his opinion as a lawyer in determining proper amount of compensation.

7. SAME—VALUE OF SERVICES—CASH DISBURSEMENTS—EVIDENCE.

In out-of-State attorney's action to recover additional compensation for extensive legal services rendered in connection with $3,000 worth of negotiable mortgage bonds stolen from defendant, which were traced to a city out of the State, judgment for $36.78, the amount of cash disbursements *held*, not against the weight of the evidence presented, where plaintiff had been paid $800 over a period of six years while case was active, although a judgment for a larger sum might have been affirmed.

Appeal from Wayne; Jeffries (Edward J.), J., presiding. Submitted October 21, 1937. (Docket No. 129, Calendar No. 39,687.) Decided December 14, 1937.

Assumpsit by Herbert A. Baker against Hall-Dodds Company, a Michigan corporation, for sums due as attorney's fee. From judgment for plaintiff in an alleged insufficient amount, he appeals. Affirmed.

*Harrison T. Watson (Frank W. Atkinson,* of counsel), for plaintiff.

*Dykema, Jones & Wheat (Benjamin J. Manley,* of counsel), for defendant.

BUTZEL, J. In 1925, certain negotiable bonds, part of an issue secured by a real estate mortgage, were stolen by robbers from the premises of defendant in Detroit. Defendant had acquired the bonds for presentation to secure a discharge of the mortgage upon its due date in September, 1926. Through a national detective agency, $3,000 of the bonds were traced to Boston, where one Baer claimed to be a *bona fide* holder of the bonds. Defendant, through Elroy O. Jones, its Detroit counsel, retained plaintiff, a Boston attorney, to bring appropriate proceedings to enjoin the negotiation of the bonds, and on November 10, 1925, defendant through plaintiff filed a bill and secured a temporary injunction. The case was referred to a master before whom testimony was taken for two full days and one afternoon. A brief was prepared and submitted to the master who held adversely to defendant. However, upon exceptions being filed to the master's report, the judge ordered the case resubmitted to the master. Plaintiff was instructed by Mr. Jones to delay the proceedings, if possible, until after the maturity of the bonds so as to prevent negotiation by Baer, and thus enable defendant to avail itself of a defense which otherwise might not be invoked against an

innocent purchaser for value before maturity. After the resubmission of the case to the master, delays ensued. The master died and the case was dismissed after the lapse of three years in which no progress had been made. Defendant secured the discharge of the mortgage by decree in the Wayne circuit court on proof of payment of all the other bonds except the stolen ones and upon a showing that the latter had been stolen after defendant had acquired them. We shall not detail the many steps taken by plaintiff in his efforts in defendant's behalf, nor is there any reason to belittle the value of a large part of his services. His statement of his services is as follows:

"In this case I appeared before the superior court 15 different times; argued the matter of an interlocutory injunction and reference to a master; made various motions for depositions; argued at length on the matter of the recommittal of the master's report; argued against confirming the master's report and on the exceptions thereto; appeared before the master for substantially three days and took testimony on two of them, assisting Mr. Jones on the second day's hearing; prepared a brief for the master after two days' hearing and a second brief after the third day's hearing. I also prepared a brief, submitted it to the superior court on the exceptions and the motion to recommit. I carried on correspondence with the Hall-Dodds Company and with Mr. Jones, counsel for that company, and with attorneys for the defendant Baer, and other defendants. I dictated and sent approximately 80 letters and 4 telegrams, and received approximately 50 letters and three telegrams. I secured an order from the court which recommitted the master's report to the master for the taking of further evidence and further report of evidence after the master had rendered an unfavorable report. I spent 110 hours and 3 full days. I did some work on this case on 105 different

days over a period from November 10, 1925, to November 13, 1930. I performed some services varying in character, importance and expenditure of time, on 37 different days, which services consisted in carrying on correspondence, attendance at court, drafting of motions, securing allowance for the same, the time of the services on the 37 different days not being included in the 110 hours and 3 full days previously referred to. The original amount in controversy was $3,000 in bonds, with interest at 7 per cent., said bonds having the maturity date of September 1, 1926, for which amount the Hall-Dodds Company was liable if the bonds were in the possession of a *bona fide* purchaser for value without notice. This liability has been effectively and completely quashed by the proceedings taken in the Massachusetts court and the result secured is a practical cancellation and return of the bonds since the statute of limitations, I am informed, effectively prevents any suit at this time. There was also recovered as a result of the proceedings in this case, $2,800 in other bonds. The Hall-Dodds Company was ready and did make a settlement conditioned on the result arising out of certain information given by the defendant Baer, in return for the promise to pay him that amount if the information was trustworthy and resulted in substantial benefit to the company. The company has never paid the $2,550 which it promised to pay to this information and benefit. Of course, the statute of limitations in Massachusetts being 6 years on an ordinary contract, has long since run on any obligation to pay as a result of that settlement. I spent very little time in an attempt to settle this case, the longest time being with Mr. Dodds at my office in conference with the defendant Baer and his attorney. Thereafter my only proposal of settlement came as a result of casual meetings with Mr. Kelly as we met on the street to and from the courthouse, or elsewhere, when Mr. Kelly would mention some certain sum,

which I would communicate to Mr. Jones. I did not include this time spent in talking with Mr. Kelly in reference to a settlement of the case in the charges.''

Plaintiff's time sheets show that some time was spent in trying to negotiate a settlement. Defendant, however, contends that it never authorized or agreed to a settlement, and that plaintiff had no right to charge for time spent in trying to effect a settlement. Discovery of $2,800 worth of stolen bonds, recovered by defendant in Detroit, came about in a casual manner during the progress of the case in Boston. Plaintiff concedes that only $3,000 together with interest thereon was involved in the litigation. Payments on account were sent to plaintiff from time to time; $100 in 1925, $350 in 1926, $200 in 1928, and finally $150 in 1930, when the case became dormant. On November 16, 1927, after almost all the work had been done, plaintiff sent a written request for $250 ''on account of fees and expenses to date.'' It seems quite natural to infer that he must or should have appreciated at that time that the amount involved in the case was not large. The payments subsequent to 1927 amounted to $350. Considerable time was charged by him for securing adjournments, which usually are obtained without the use of much effort or time. $250 of the charges were made by him after the case was placed on the inactive list or no progress docket. Even after the case had been dismissed, plaintiff wrote to Mr. Jones without even intimating that the case had been thus disposed of. Plaintiff brought the instant suit for an additional $950, and also for $36.78 for cash disbursements. This would make a total charge of $1,786.78, without considering the other cash disbursements made by defendant in the litigation and the payment for the services of Mr. Jones, who was also very active in the case. The case was heard be-

fore a judge without a jury who rendered a judgment in plaintiff's favor of $36.78 without costs. Plaintiff has appealed.

We have frequently commented on the difficulties in determining the proper charges for legal services when no agreement is made in advance or during the progress of the case. In making such determination, the amount of time consumed is one of many factors. The amount involved must also be taken into consideration. In *McGraw* v. *Township of Lake,* 266 Mich. 38, canon No. 12 of American Bar Association, relating to charges, is set forth. Also, see, *Fry* v. *Montague,* 242 Mich. 391, and *Behr* v. *Baker,* 255 Mich. 607. It largely becomes a question of fact to be determined by the jury or by the trial judge sitting without a jury. We will not reverse the judgment of the trial judge sitting as a jury unless it is against the weight of the evidence. Plaintiff introduced testimony of Massachusetts attorneys who, as experts, testified that plaintiff's charge was reasonable and that he was entitled to make a larger one. Mr. Jones testified that he did not like the way the case was progressing and particularly plaintiff's first claim that a settlement offer had been made by defendant when none had been, and therefore he went to Boston himself and personally conducted a large part of the examination before the master, plaintiff also being present. Mr. Jones also made a study of the law involved and furnished plaintiff with a law brief of 15 pages. The portion of the brief relating to the facts, which were very simple, was prepared by plaintiff.

The trial of the instant case was not conducted by Mr. Jones as he was a material witness. He testified that while he was not particularly familiar with the fees charged in Boston, he did know the amounts usually charged by attorneys in cities comparable in

size with Boston, Detroit, and other cities, and that plaintiff had been paid a fee for his services such as was reasonable and customary in these cities. Mr. Jones' interest in the case was evident and his knowledge of the fees in Boston was limited in the manner stated. His expert testimony as to fees, as limited by him, was not improper, even though it might be considered of a weaker character than that of the Boston attorneys. *Kent Furniture Manfg. Co.* v. *Ransom,* 46 Mich. 416. The judge, on the other hand, was also a lawyer and so stated in his opinion. In *Kelley* v. *Richardson,* 69 Mich. 430, 437, we stated:

"The objection taken below, that the questions put to the witnesses concerning the value of plaintiff's services included matters not belonging to expert testimony, seems to have been based on the notion that testimony concerning legal services is scientific, and only open to lawyers, while testimony relating to business services has no scientific basis, and is not expert testimony for that reason. But there is no foundation for any such distinction. The value of services can never be a question of science."

In *Baxter* v. *Szucs,* 248 Mich. 672, we again said:

"No one can state as a fact the value of extensive legal services. He can only give his opinion."

The law as set forth in *Head* v. *Hargrave,* 105 U. S. 45, is as follows:

"Taken together the charge amounts to this: that while the jury might consider the nature of the services and the time expended in their performance, their value, that is, what was reasonable compensation for them, was to be determined exclusively from the testimony of the professional witnesses. They were to be at liberty to compare and balance the conflicting estimates of the attorneys on that point, but not to exercise any judgment thereon by application

of their own knowledge and experience to the proof
made as to the character and extent of the services;
that the opinions of the attorneys as to what was
reasonable compensation was alone to be consid-
ered.  That the defendants so understood the charge
is evident from the qualifications of it which they
desired to obtain; and the jury may, in like manner,
have so understood it.  And as we so construe it,
we think the court erred, and that it should have
been qualified by the instructions requested.  * * *

''It was the province of the jury to weigh the tes-
timony of the attorneys as to the value of the serv-
ices, by reference to their nature, the time occupied
in their performance, and other attending circum-
stances, and by applying to it their own experience
and knowledge of the character of such services.  To
direct them to find the value of the services from the
testimony of the experts alone, was to say to them
that the issue should be determined by the opinions
of the attorneys, and not by the exercise of their
own judgment of the facts on which those opinions
were given.  The evidence of experts as to the value
of the professional services does not differ, in prin-
ciple, from such evidence as to the value of labor in
other departments of business, or as to the value of
property.  So far from laying aside their own gen-
eral knowledge and ideas, the jury should have ap-
plied that knowledge and those ideas to the matters
of fact in evidence in determining the weight to be
given to the opinions expressed; and it was only in
that way that they could arrive at a just conclusion.
While they cannot act in any case upon particular
facts material to its disposition resting in their pri-
vate knowledge, but should be governed by the evi-
dence adduced, they may, and to act intelligently they
must, judge of the weight and force of that evidence
by their own general knowledge of the subject of
inquiry.  If, for example, the question were as to the
damages sustained by a plaintiff from a fracture of
his leg by the carelessness of a defendant, the jury

would ill perform their duty and probably come to a wrong conclusion, if, controlled by the testimony of the surgeons, not merely as to the injury inflicted, but as to the damages sustained, they should ignore their own knowledge and experience of a value of a sound limb. Other persons besides professional men have knowledge of the value of professional services; and, while great weight should always be given to the opinions of those familiar with the subject, they are not to be blindly received, but are to be intelligently examined by the jury in the light of their own general knowledge; they should control only as they are found to be reasonable."

In *Walbridge* v. *Barrett*, 118 Mich. 433, we again said:

"Defendant requested the court to charge:

" 'You are the judges of the value of plaintiffs' services. The opinions of the lawyers who have testified as to such value are not conclusive, but merely advisory. If you find it necessary in this case to pass upon the question of the value of any of the services, you, as jurors, must use your own judgment in determining such value, taking into consideration all the evidence in the case bearing thereon.'

"The court refused this request, and instructed the jury that they must determine from the sworn evidence in the case how much was justly due. Had there been no testimony of the value of plaintiffs' services aside from that of the attorneys, the case would undoubtedly have been ruled by *Wood* v. *Barker*, 49 Mich. 295; but there was other evidence bearing upon the value of the services. Bills had been rendered amounting to less than that claimed upon the trial. There were conversation between plaintiffs and defendant, and also agreements for *per diem* charges. The bill of exceptions which plaintiffs had prepared was in evidence, together with their statement of the time spent in preparing it. Under these circumstances, the rule in *Wood* v. *Barker* was not applicable, and the court should have

instructed the jury that the opinions of the attorneys were not conclusive. 2 Jones, Evidence, § 389; *Moore* v. *Ellis,* 89 Wis. 108 (61 N. W. 291); *Johnson* v. *Railroad Co.,* 37 Minn. 519 (35 N. W. 438)."

We have also recognized that weight should be given to the opinion of the trial judge as a lawyer in determining fees in *Fry* v. *Montague, supra.* While a judgment for a larger sum might have been affirmed, nevertheless we cannot say that the judgment of the trial court was against the weight of the evidence.

The judgment is affirmed, with costs to defendant.

FEAD, C. J., and NORTH, WIEST, BUSHNELL, SHARPE, POTTER, and CHANDLER, JJ., concurred.